## JOHN WILKERSON *v.* STATE OF MISSISSIPPI.

CRIMINAL PROCEDURE. *Bailiff. Improper communication to jury.*

It is grossly reprehensible for the bailiff in charge of a jury to inform them as to the nature of the penalty attendant upon their verdict of conviction; and in cases of felony such action on his part will vitiate the verdict if there be a reasonable suspicion that they were influenced thereby.

FROM the circuit court of Marshall county.

HON. S. M. STEPHENS, Judge.

Wilkerson, appellant, was indicted, tried, and convicted in the court below and sentenced to the penitentiary. He appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Fant & Fant*, for appellant.

It was erroneous not to set aside the verdict, when it was proved that Ponds, the bailiff, had been taken into the confidence of the jury in regard to their verdict, and that a question of law had been left to his decision, by common consent of the jury, and an agreement made that they should abide by his decision. The bailiff is prohibited by law from having any conversation with the jury after the case had been put into their hands. Code 1892, § 729. The submitting of the question of law to the bailiff rendered the verdict not the verdict of the jury, but the verdict of the jury assisted by the bailiff. Even in a civil case such conduct of the bailiff renders the verdict void, and *a fortiori*, it would render a verdict in a criminal case void. *Barnett* v. *Eaton*, 62 Miss., 768; *Iron Works* v. *Tappan*, 56 Miss., 659. By § 732, code of 1892, it is the province of the court alone to instruct the jury as to questions of law, and that, too, only at the request of one side or the other of the case, so manifestly this attempt at instructing is a fatal error, especially

as the instruction was incorrect and a misstatement of the law. *Bangs* v. *State*, 61 Mich., 363.

*Monroe McClurg*, attorney-general, for appellee.

Bailiff Ponds expressed no opinion as to the guilt or innocence of the accused upon any proposition. In *Barnett* v. *Eaton*, 62 Miss., 768, the bailiff was a partisan "and took part in their deliberations." *Skates* v. *State*, 64 Miss., 644; *Brown* v. *State*, 69 Miss., 398. *Iron Works* v. *Tappan*, 56 Miss., 659, has no bearing on the case. *Bang* v. *State*, 61 Miss., 363, simply holds that it was not error to refuse to permit law books read to the jury, as the law must come from the court by written instruction requested. Counsel asks too much of this court in requesting it to construe the brief conversation of a single juror with the bailiff as an instruction to the jury.

TERRAL, J., delivered the opinion of the court.

The appellant was indicted in the circuit court of Marshall county for burglary and grand larceny, and was convicted of burglary and petit larceny, and was sentenced to the penitentiary for one year. From this judgment he appeals. The action of the court upon the evidence and the instructions is assigned for error, but upon the whole case it is so clearly right that the defendant is left no room to complain in that behalf. He further complains of the trial because of the conduct of one of the bailiffs in charge of the jury which convicted him. In regard to this matter it was shown that Will Bond and Clayton Humphreys were the sworn bailiffs in charge of the jury, and that about an hour and a half after the case had been submitted to the jury one of the jury opened the door and asked Bond, the bailiff, the difference between burglary and larceny and burglary and petit larceny; and Bond replied that the first would send the prisoner to the penitentiary, and the other would send him to the county farm; that the juror reported to his fellows what had occurred and what the bailiff said; and that immediately

they made up their verdict. The question therefore presented is, what was the probable effect of the statement made by Bond to the jury? Was it wrongful and hurtful? Did it tend to affect their finding? In the trial of capital cases it is the rule and practice to swear the bailiffs who attend the jury, specific- ally, *inter alia*, that they will keep the jury together, and will not suffer them to separate or depart the one from the other, and they will not speak to them touching the case in hand, and will not suffer any other person to speak to them on any sub- ject whatever. In the trial of all felonies the duties of the at- tending bailiffs are the same, and what is specifically sworn to by the bailiffs in capital cases is the bounden duty of the officers in all felonies. Nor is it less their duty in misdemeanors and in civil cases, though the consequence of a violation of the rule in the last-named cases is not so seriously regarded as it is in cases of felony. And, lest such matter may not be fully known to the ministerial officers of the court, or may not be regarded by them as of importance, it is the duty of the trial judge to give the sheriff, his deputy and his bailiffs, specific instructions as to their respective duties, one of which is, undoubtedly, that they should not speak to the jury touching the case on trial. Indeed, it is highly improper for officers to hold un- necessary converse with the members of the jury while they have a case in consideration; but to speak of the case itself, and especially of a matter of importance relating to it, is a great contempt of the authority of the court, and may result in irrep- arable harm.

We are of the opinion that the record sustains the presump- tion that the statement made to the jury by the bailiff may have had a decided effect upon the verdict. The jury had re- tired from the bar and had been in consideration of the case for an hour and a half, and upon receiving the statement of Bond they immediately made up their verdict. According to the statement of Bond as to what the law of the case was, the verdict rendered was for a misdemeanor, or was so intended,

while the crime proven, in any view of the evidence, was a felony. The statement of Bond was erroneous and untrue in law and in fact, but the mischief is not the less on that account. If it could be known, which it is now impossible to know, that the verdict when rendered, if no such statement had been made, would have been just as the one rendered, that would not change the law of the case. The atmosphere of the case, if the figure be allowable, as shown by the record, discloses a purpose to deal gently with the defendant, a young man thought to have been led astray by others. For the breaking into the dwelling house of a neighbor while the family was absent, by bursting open the outer rear door with an ax, and of stealing thirty-odd dollars, clearly proven, the judgment recites that he was sentenced for "one full" year to the penitentiary, whereas common justice and practice would have sent him up for several years. The hesitation of the jury in convicting him promptly upon certain evidence of unmistakable guilt, fortified by his own testimony to facts which left no room for doubt of his guilt, raises, as we think, a reasonable suspicion that the verdict was the result of the statement of Bond. By § 729 of the code 1892, it is made a contempt of court for an officer to converse with a juror after the jury has retired from the bar, save by order of the court, upon any, even an immaterial subject; but to talk with them, or with one of them, while in retirement concerning material points in the case, is a much more serious matter. Such communication, in our judgment, affects the integrity and purity of the verdict, and it cannot be permitted to stand. It is to be hoped that the learned court inflicted merited punishment upon the erring bailiff; otherwise it may not be hoped to stop a practice so shameful to trial courts in the administration of justice.

*Reversed and remanded.*