KITCHENS, Justice,
for the Court:
¶ 1, Bobby Batiste was convicted of capital murder with the underlying felony of robbery and was sentenced to death in the Circuit Court of Oktibbeha County. Batiste v. State, 121 So.3d 808, 823 (Miss. *291 2013).[1] This Court affirmed Batiste’s conviction and sentence on May 16, 2013. Id. Batiste now seeks, inter .alia, leave to file a Petition for Post-Conviction Relief in the Circuit Court of Oktibbeha County. His proposed petition raises sixteen separate issues, one of which we address: whether certain statements, alleged to have been made by bailiffs to jurors, violated Batiste’s constitutional right to an impartial jury.
¶ 2. Attached to Batiste’s proposed petition are two affidavits from persons who served on the jury. The first, from juror Denise Cranford, says that “[t]he bailiffs were always very friendly and helpful to us. When we had questions, the bailiffs explained the law to us.”' She continued:
At the start of the trial, I and some of the other jurors were concerned that the jury was all white but one of the bailiffs explained to us that blacks and whites are different in their opinion about the death penalty. The bailiff said that black people will hot consider the death penalty. After that explanation I was no longer concerned.
Another juror, Webster Rowan, related, by affidavit, a similar experience: “[the jury] did not include any blacks, which at first bothered me. Someone, though I can’t remember who exactly, explained that you have to be comfortable with the death penalty, and blacks don’t feel as comfortable with it.” He went on to say that, “[djuring the penalty phase deliberations, we were initially split” and that “[ajfter much discussion and prayer over the course of most of that Saturday, we were able to arrive at our decision.”
ANALYSIS ‘
¶ 3. Batiste claims that his Sixth Amendment right to a fair trial by an impartial jury was violated by the conduct of the bailiffs at his trial: “In all criminal prosecutions, -the accused shall enjoy the right to a speedy and public trial, by an impartial jury_” U.S. Const. amend. VI; see also Miss. Const. art. 3, § 26. We have held that “[t]he right to a fair trial by an impartial jury is fundamental and essential to our form of government. It is a right guaranteed by both the federal and the state constitutions.” Johnson v. State, 476 So.2d 1195, 1209 (Miss.1985) (citing Adams v. State, 220 Miss. 812, 72 So.2d 211 (1954)).
¶4. The State responds that Batiste’s claim is procedurally barred because it was “capable of determination at trial and/or direct appeal” under Mississippi Code Section 99-39-21(1) (Rev.2015). But Batiste’s claim was not ascertainable at trial or on direct appeal, because Batiste’s trial and appellate attorneys had no reason to know that the jury had been influenced unduly by the bailiffs. Affidavits of individual jurors revealed to Batiste’s PCR counsel problems with the conduct of the bailiffs. It is precisely this sort of “evidence of material facts, not previously presented and heard,” which is contemplated by. the Mississippi Uniform Posb-Conviction Collateral Relief Act, Mississippi Code Section 99-39-5(l)(e) (Rev.2015).
¶ 5. Even if the State is correct that Batiste’s claim is procedurally barred, “[e]rrors affecting fundamental constitutional rights are excepted from the procedural bars of the [Uniform Post Conviction Collateral Relief Act].” Rowland v. State, 42 So.3d 503, 508 (Miss.2010). Furthermore, “death is different.” Pruett v. State, 574 So.2d 1342, 1345 (Miss.1990) (quoting *292 Jackson v. State, 337 So.2d 1242, 1252 (Miss.1976)). As such, “procedural niceties give way to the search for substantial justice.” Hansen v. State, 592 So.2d 114, 142 (Miss.1991). According to the heightened standard of review this Court employs in death penalty eases, “all doubts are to be resolved in favor of the accused.” Chamberlin v. State, 989 So.2d 320, 330 (Miss.2008) (citing Lynch v. State, 951 So.2d 549, 555 (Miss.2007)) (emphasis added). In light of the foregoing, we find that Batiste’s claim is not procedurally barred and we proceed to address the merits.
¶ 6. In support of his claim that his right to an impartial jury was violated by the bailiffs’ alleged misconduct, Batiste cites Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). In that case, the petitioner had been convicted of second-degree murder. Id. at 363, 87 S.Ct. 468. At an evidentiary hearing on his petition for post-conviction relief, the Oregon trial court had found that' “a court bailiff assigned to shepherd the sequestered jury, which sat for eight days, stated to one of the jurors in the presence of others, while the jury was out walking on a public sidewalk: ‘Oh that wicked fellow (petitioner), he is guilty.’” Id. The same bailiff, “on another occasion said to another juror under similar circumstances, ‘If there is anything wrong (in finding petitioner guilty), the Supreme Court will correct it.’ ” Id. at 364, 87 S.Ct. 468.
¶ 7. The Oregon trial court determined that the petitioner’s rights had been violated, but the Supreme Court of Oregon reversed. Id. The United States Supreme Court reversed, per curiam, the judgment of the Supreme Court of Oregon. Id. The Court held that “we believe that the unauthorized conduct of the bailiff ‘involves such a probability that prejudice will result that it is deemed inherently lacking in due process.’ ” Id. at 365, 87 S.Ct. 468 (quoting Estes v. Texas, 381 U.S. 532, 542-43, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965)). The Court continued: “Here there is dispute neither as to what the bailiff, an officer of the State, said nor that when he said it he was not subjected to confrontation, cross-examination or other safeguards guaranteed to the petitioner.” Parker, 385 U.S. at 364, 87 S.Ct. 468
¶ 8. This Court, too, has considered whether the rights of the defendant are violated by improper bailiff commentary. In Brown v. State, 69 Miss. 398, 10 So. 579, 579-80 (1892), this Court held that:
We are not prepared to affirm that no injury resulted to the appellant from the suggestion of the bailiff to the jury that his personal desire was that they should riot longer delay their decision, as he wished to be relieved of further waiting, and his officious intermeddling by pointing out an instruction (by which the jury were told that it was within their power to find the defendant guilty of murder, and award the punishment of imprisonment for life instead of capital punishment) upon which, in the opinion of the prosecuting attorney, they would agree upon a verdict.
This Court reversed, holding that “one on trial for his life has rights which even a bailiff must respect.” Id.
¶ 9. In Wilkerson v. State, 78 Miss. 356, 29 So. 170 (1901), this Court reversed and remanded a judgment by which the defendant had been tried and convicted of burglary and petit larceny:
[A]bout an hour and a half after the case had been submitted to the jury one of the jury opened the door and asked Bailiff Bond the difference between burglary and larceny and burglary and petit larceny, and Bond replied that the first would send the prisoner to the penitentiary and the other would send him to the county farm.
*293 Id. This aided the jury to consensus, for “immediately they made up their verdict.” Id. The Court held that “the record sustains the presumption that the statement made to the jury by the bailiff may have had a decided effect upon the verdict.” Id. The Court continued: “Such communication, in our judgment, affects the purity of the verdict, and it cannot be permitted to stand.” Id. In Shaw v. State, 79 Miss. 577, 31 So. 209 (1902), this Court reversed a judgment in a case in which the jury had been told by the bailiff “ ‘that the judge would leave for home in a few minutes, and, unless they would return a verdict at once, they would be held until the following Monday.’” Not surprisingly, “the result was a verdict in five minutes.” Id.
¶ 10. In Horn v. State, 216 Miss. 439, 62 So.2d 560 (Miss.1953), Horn, having been convicted of manslaughter, appealed to this Court. Id. at 441, 62 So.2d 560. The bailiff was asked by the jury about the penalty for the crime of manslaughter, whereupon he responded that the penalty was service of between one year to ten years in the state penitentiary. Id. “In about thirty minutes,” the jury returned the verdict: “ We, the Jury, find the defendant guilty as charged, and ask that he be given the mercy of-the court.’ ” Id. The Court reversed the judgment and remanded the case,' because “the jurors understood from the bailiff the punishment for manslaughter was from one to ten years in the penitentiary. That was not correct. In the case of punishment by being sent to the penitentiary the penalty is not less than two years nor more than twenty years.” Id. at 443, 62 So.2d 560. “Conceivably, had the jurors not thought defendant could be sent to the penitentiary for as short a period as one year, they would not have convicted him — at least, it is impossible to say they were not influenced in their action by the information they had received from the bailiff.” Id.
¶ 11. In the present case, affidavits from jurors who convicted Batiste and sentenced him to death support Batiste’s claim that bailiffs made improper comments -which affected his right to a fair trial. The affidavits substantiate that the bailiffs “explained the law” when the jurors had questions about it. Furthermore, according to one juror, the bailiff explained that the reason no African Americans were serving on the jury was because “blacks and whites are different in their opinion about the death' penalty” and “black people will not consider the death penalty.” Another juror agreed that “someone” had “explained that you have to be comfortable with the death penalty, and blacks don’t feel as comfortable with it.” While such an explanation may have alleviated, the concerns of jurors regarding the absence of African Americans on Batiste’s jury, we cannot say that such remarks to jurors, if made, did not impact Batiste’s fundamental constitutional right to a fair trial by an impartial jury. This case seems especially egregious in light of the heightened standard which we are bound to apply in cases which involve the death penalty. As in Wilkerson, “the record sustains the presumption that the statement made to the jury by the bailiff may have-had a decided effect upon the verdict.” Wilkerson, 29 So. at 170. As in Parker, “we believe that the unauthorized conduct of the bailiff ‘involves such a probability that prejudice will result that it is deemed inherently lacking in due process.’ ” Parker, 385 U.S. at 365, 87 S.Ct. 468. One of the jurors’ affidavits indicated that, “[djuring the penalty phase deliberations, we were initially split,” so it cannot be said with certainty whether the split was resolved by the comments of the bailiffs. Based on the record before us, we find that the bailiffs conduct, if accurately reported, was presumptively prejudicial. . .
*294 ■¶ 12. We have held that “a petitioner is entitled to an in-court opportunity to prove his claims if the claims are ‘procedurally alive “substantiality] showing denial of a state or federal right.”’” Washington v. State, 620 So.2d 966, 968 (Miss.1993) (quoting Horton v. State, 584 So.2d 764, 767 (Miss.1991) (quoting, Neal v. State, 525 So.2d 1279, 1281 (Miss.1987))). We find that Batiste has made a substantial showing of a denial of a state or federal right sufficient to entitle him to a hearing to enable the circuit court to ascertain what communications were had between bailiffs and/or other persons and the jury and to determine, insofar as is possible, what impact, if any, those communications had on Batiste’s conviction and sentence. We therefore grant Batiste’s motion for leave to file his pétition for post-conviction relief in the Circuit Court of Oktibbeha County.-
CONCLUSION
¶ 13. ■ ■ For the foregoing reasons, we grant Batiste leave to file his petition for post-conviction relief in the Circuit Court of Oktibbeha County within sixty days of the issuance of this Court’s mandate.
¶ 14. LEAVE TO SEEK POST-CONVICTION RELIEF GRANTED.
WALLER, C.J., DICKINSON, P.J., KING AND COLEMAN, JJ., CONCUR. ' PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND LAMAR, J. MAXWELL, J., NOT PARTICIPATING.

, This Court thoroughly detailed the facts of ■ Batiste’s case on direct appeal and they will not be repeated here.