# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01636-SCT

*JOEY MONTRELL CHANDLER a/k/a JOEY M.*
*CHANDLER a/k/a JOEY CHANDLER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2015 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | CARRIE A. JOURDAN |
| | KATIE NICOLE MOULDS |
| | SCOTT WINSTON COLOM |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH BRIGGS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED – 03/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     In 2005, Joey Montrell Chandler was convicted for the murder of his cousin Emmitt Chandler and sentenced to life in prison under Mississippi Code Section 97-3-21 (2005). The Court affirmed his conviction and sentence on appeal. ***Chandler v. State***, 946 So. 2d 355, 356, 366 (¶¶ 1, 54) (Miss. 2006). In 2015, Chandler received a new sentencing hearing

for his murder conviction in light of the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012). Following the hearing, the circuit court sentenced Chandler to life in prison. Chandler appeals, requesting that he be resentenced because the trial court failed to analyze all the factors identified in *Miller* and adopted in our subsequent decision in *Parker v. State*, 119 So. 3d 987 (Miss. 2013).

## FACTS AND PROCEDURAL HISTORY

¶2.    In 2014, Chandler filed a petition with the Court claiming that he was entitled to resentencing in light of the United States Supreme Court's decision in *Miller*. We granted Chandler permission to file a motion to set aside his sentence in light of *Miller*. On January 8, 2015, the trial court held a hearing on the matter in which it allowed Chandler to present evidence in support of his motion.

¶3.    On October 9, 2015, the trial court entered a detailed, six-page order. The trial court recounted what the evidence showed at Chandler's trial. Chandler had been selling because his girlfriend was pregnant and he needed to earn money to help pay for expenses. Chandler observed his cousin Emmitt exiting Chandler's vehicle with Chandler's marijuana. The next day, Chandler armed himself and confronted Emmitt. Chandler shot Emmitt two times with a pistol and the wounds were lethal. Chandler disposed of the murder weapon by throwing it in a pond.

¶4.    At the time of the murder, Chandler was seventeen years, six months, and thirteen days old. Upon resentencing, the trial court found that Chandler's actions on the day of the

murder showed premeditation, planning, and an attempt to dispose of the murder weapon. Noting that the victim was not armed, the trial court described the murder as "heinous" under the facts of the case.

¶5. The trial court's order included a discussion of *Miller* and our subsequent cases applying *Miller*, including *Parker* and *Jones v. State*, 122 So. 3d 698 (Miss. 2013). The trial court's order verified that it had reviewed the transcripts of the case, the court file, and Chandler's presentence investigation report. After carefully reviewing the evidence in the case and the matters presented in the resentencing hearing, the trial court found that Chandler should be sentenced to life in prison for the murder of his cousin Emmitt.

## STANDARD OF REVIEW

¶6. The Court has yet to review a trial court's sentencing decision under *Miller*. Chandler argues that the Court should review the trial court's decision with the same "heightened scrutiny" that applies in death-penalty cases, because a sentence of life without parole is the harshest punishment that can be imposed on a juvenile offender. *See Bennett v. State*, 990 So. 2d 155, 158 (Miss. 2008) ("The standard of review of convictions for capital murder and sentences of death is 'heightened scrutiny.'"). Accordingly, Chandler contends that all doubts as to the appropriateness of the trial court's decision must be resolved in his favor. In contrast, the State argues that the trial court's imposition of a criminal sentence is reviewed for an abuse of discretion. *See Hampton v. State*, 148 So. 3d 992, 999 (Miss. 2014).

3

¶7.     Heightened scrutiny is reserved for death-penalty cases due to the unique and irreversible nature of that punishment. The Court has no reasonable basis to raise its standard of review for a sentence in a noncapital case simply because it involves a juvenile offender. Accordingly, we hold that there are two applicable standards of review in a *Miller* case. First, whether the trial court applied the correct legal standard is a question of law subject to *de novo* review. *Smothers v. State*, 741 So. 2d 205, 206 (Miss. 1999). If the trial court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion. *Hampton*, 148 So. 3d at 999.

## DISCUSSION

¶8.     Chandler argues that the trial court failed to address all of the sentencing considerations mandated by *Miller* and *Parker*. Thus, the issue on appeal is whether the trial court comported with the requirements of *Miller* and *Parker* when resentencing Chandler to life in prison for a murder which he had committed when he was seventeen years old. In short, we hold that the trial court comported by applying the correct legal standard because it afforded Chandler a hearing and sentenced Chandler after considering and taking into account each factor identified in *Miller* and adopted in *Parker*. Moreover, we cannot say that the trial court's decision to sentence Chandler to life was an abuse of discretion.

¶9.     *Miller* and *Parker* require the trial court to "take into account" and "consider" the factors identified in *Miller* before sentencing. *Miller*, 567 U.S. at 480; *Parker*, 119 So. 3d at 995, 998 (¶¶ 19, 26). Contrary to Chandler's assertions, nothing in *Miller* or *Parker*

4

requires trial courts to issue findings on each factor or limits trial courts to considerations strictly personal to the juvenile offender. As evidenced by the trial court's order, it took into account and considered every factor, comporting with *Miller* and *Parker*. The trial court recognized in its order that "before a life sentence may be imposed for a homicide, a sentencing hearing must be held and the [trial c]ourt must consider certain factors."

¶10. In *Miller*, the Supreme Court of the United States concluded that mandatory life sentences without parole for juvenile homicide offenders violate the Eighth Amendment's prohibition on cruel and unusual punishments. *Miller*, 567 U.S. at 469-70. The *Miller* Court held "that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing." *Montgomery v. Louisiana*, 136 S. Ct. 718, 725 (2016) (citing *Miller*, 567 U.S. 460).

¶11. The *Miller* Court stopped short of establishing a specific procedure for lower courts to follow when sentencing juvenile homicide offenders; rather, the *Miller* Court observed several important features of youth that would be relevant to the sentencing decision. In *Parker*, we held that the factors identified by the *Miller* Court must be considered by the sentencing authority. *Parker*, 119 So. 3d at 995–96 (¶ 19). We explained:

> *Miller* does not prohibit sentences of life without parole for juvenile offenders. Rather, it "require[s] [the sentencing authority] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 132 S. Ct. at 2469.

*Parker*, 119 So. 3d 995 (¶ 19) (emphasis added).

¶12.    Juvenile offender Lester Lavon Parker Jr. had been convicted and sentenced and had filed his notice of appeal before *Miller* was decided by the Supreme Court. *Id*. at 989, 996 (¶¶ 1, 20). We granted Parker's request to "remand for a sentencing hearing with the opportunity to present mitigating evidence." *Id*. at 998 (¶ 26). Accordingly, we vacated Parker's sentence and remanded for a "hearing where the trial court, as the sentencing authority, is required to consider the *Miller* factors before determining sentence." *Id*.

¶13.    We held that "[a]fter consideration of all circumstances required by *Miller*, the trial court may sentence *Parker*, despite his age, to 'life imprisonment.'" *Id*. at 999 (¶ 28). "However, if the trial court should determine, after consideration of all circumstances set forth in *Miller*, that Parker should be eligible for parole, the court shall enter a sentence of 'life imprisonment with eligibility for parole notwithstanding the present provisions of Mississippi Code Section 47–7–3(1)(h).'" *Id*. We affirmed Parker's conviction but vacated his sentence and "remand[ed] [the] case to the Circuit Court of Copiah County for a hearing to determine whether he should be sentenced to 'life imprisonment' or 'life imprisonment with eligibility for parole notwithstanding the present provisions of Mississippi Code Section 47–7–3(1)(h).'" *Id*. at 1000 (¶ 29).

¶14.    In *Jones*, we explained: "*Miller* explicitly prohibits states from imposing a mandatory sentence of life without parole on juveniles. Thus, *Miller* rendered our present sentencing scheme unconstitutional if, and only if, the sentencing authority fails to take into account characteristics and circumstances unique to juveniles." *Jones*, 122 So. 3d at 702 (¶ 12).

6

Recently, the Supreme Court wrote in regard to what *Miller* requires:

> *Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. The [*Miller*] Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of children's diminished culpability and heightened capacity for change, *Miller* made clear that appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.

*Montgomery*, 136 S. Ct. at 733-34 (quotations and citations omitted) (emphasis added).

¶15. The Supreme Court also addressed what *Miller* does not require. *See Montgomery*, 136 S. Ct. at 735. The *Montgomery* Court confirmed that *Miller* does not require trial courts to make a finding of fact regarding a child's incorrigibility. *Id*. Moreover, after reviewing *Miller* and *Montgomery*, we discern that no rebuttable presumption exists in favor of parole eligibility for juvenile homicide offenders. Rather, *Miller* explicitly foreclosed imposition of a *mandatory* sentence of life without parole on juvenile offenders. *Jones*, 122 So. 3d at 702.

¶16. Chandler places the trial court in error for failing to make any findings concerning Chandler's capacity for rehabilitation. Neither *Miller* nor *Parker* mandates that a trial court issue findings on each factor. Regardless, the trial court certainly "considered" and "took into account" rehabilitation. *See Parker*, 119 So. 3d at 995 (¶ 19) (citing *Miller* 567 U.S. at 477-78)). The trial court exceeded the minimum requirements of *Miller* and *Parker* by specifically identifying every *Miller* factor in its order.

7

¶17. As to the rehabilitation factor, the trial court found: "The United States Supreme Court also talks about rehabilitation and the defendant's prospects for future rehabilitation. Th[e trial court] notes that the Executive Branch has the ability to pardon and commute sentences in this State should it deem such action warranted."

¶18. The trial court also considered several letters from various family members submitted on behalf of Chandler and other individuals urging the trial court for leniency because Chandler had been rehabilitated or was capable of rehabilitation. Chandler presented testimony at the sentencing hearing related to Chandler's rehabilitation or capability thereof. Nothing in the record indicates that the trial court did not take into account or consider such evidence. Indeed, the trial court's order ensured that it considered the entire court file, including the evidence submitted by Chandler in support of the possibility of rehabilitation.

¶19. Chandler argues that the trial court considered irrelevant information in resentencing Chandler. We do not read *Miller* or *Parker* as requiring the sentencing courts to limit their analysis to facts and circumstances strictly personal to the juvenile offender. While it is true that each juvenile offender must afforded an individualized sentencing hearing before imposing a life sentence, *Parker*, 119 So. 3d at 996 (¶ 20), the sentencing court is to "take into account how children are different." *Miller*, 567 U.S. at 480.

¶20. *Miller* and *Parker* do not prohibit the trial court from considering aspects of youth that it considers relevant for purposes of sentencing. The *Miller* Court wrote that "[m]andatory life without parole for a juvenile precludes consideration of his chronological

8

age and its hallmark features–among them, immaturity, impetuosity, and failure to appreciate risks and consequences." The trial court's considerations of Chandler's chronological age and its hallmark features by examples of youth of the same age was not an abuse of discretion.

¶21. Here, after consideration of all the *Miller* factors, the trial court had the authority to sentence Chandler to life in prison or life in prison with eligibility for parole notwithstanding present provisions of the applicable parole statute. Thus, the trial court acted within its authority by sentencing Chandler to life in prison "under current Mississippi law."

## CONCLUSION

¶22. The trial court did not *automatically* resentence Chandler to life in prison or perceive a legislative mandate that Chandler must be sentenced to life in prison without parole in violation of *Miller*. As required by *Miller* and our subsequent decision in *Parker*, the trial court held a hearing and, after considering all that was presented as well as the entire court file, sentenced Chandler to life in prison. The trial court took into account the characteristics and circumstances unique to juveniles. *Jones*, 122 So. 3d at 702 (¶ 12). Although the trial court had the authority to sentence Chandler to life in prison with the possibility of parole, it chose to sentence Chandler to life in prison, which was also within its authority. *Parker*, 119 So. 3d at 1000 (¶ 29). Because the trial court satisfied its obligation under *Miller* and *Parker*, and we cannot say the trial court abused its discretion in sentencing Chandler to life in prison, we affirm.

9

¶23.   **AFFIRMED.**

**RANDOLPH, P.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., KING AND ISHEE, JJ. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶24.   Believing that the trial court failed to address the primary focus of *Miller v. Alabama*,[1] Chandler's capacity for rehabilitation, and did not articulate that Chandler is among "the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility," I respectfully dissent. *Montgomery v. Louisiana*, 136 S. Ct. 718, 734, 193 L. Ed. 2d 599 (2016).

¶25.   Chandler's capacity for rehabilitation simply was not addressed by the trial court. The majority concludes that the trial court adequately considered the issue of rehabilitation when it reasoned that "the Executive Branch has the ability to pardon and commute sentences in this State should it deem such action warranted." (Maj. Op. at ¶ 17). However, this single statement is not responsive to the issue of rehabilitation. In *Parker v. State*, 119 So. 3d 987, 992 (Miss. 2013), this Court specifically rejected the State's argument that the possibility of conditional release at age sixty-five offered juvenile defendants a meaningful opportunity for release in compliance with *Miller*. Similarly, the possibility of receiving a pardon or commuted sentence at some unspecified future date is in no way relevant to the consideration

---

[1] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

of Chandler's capacity for rehabilitation under *Miller*.

¶26.    Consideration of the defendant's capacity for rehabilitation is a crucial step in the *Miller* analysis, because a life-without-parole sentence "reflects 'an irrevocable judgment about [an offender's] value and place in society,' at odds with a child's capacity for change." *Miller*, 567 U.S. at 473 (quoting *Graham v. Florida*, 560 U.S. 48, 74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)).  Indeed, the *Miller* Court stressed that the imposition of this sentence would be "uncommon" due to "children's diminished culpability and heightened capacity for change." *Id.* at 479. More recently, in *Montgomery*, the Supreme Court underscored the importance of considering a juvenile's capacity for rehabilitation when it recognized that "*Miller* did bar life without parole . . . for all but the rarest of juvenile offenders, those whose crimes reflect *permanent* incorrigibility." *Montgomery*, 136 S. Ct. at 734 (emphasis added). The *Montgomery* Court also found that the petitioner's evidence of "his evolution from a troubled, misguided youth to a model member of the prison community" was "relevant . . . as an example of one kind of evidence that prisoners might use to demonstrate rehabilitation." *Id.* at 736.  Here, the record included substantial evidence of Chandler's rehabilitation in prison following his conviction, including the testimony of Chandler's wife, father, and two family friends, as well as numerous letters submitted on his behalf by other family members, friends, and members of the community.  Chandler presented evidence that he would have a job and a place to live waiting for him if he was released from prison. Likewise, Chandler showed that his decade of imprisonment was virtually without

disciplinary blemish and that he excelled in job training programs offered at the prison. However, the trial court's sentencing order does not mention any of this evidence or its impact on the trial court's judgment.

¶27.   Other courts have recognized that additional procedural safeguards are necessary to implement *Miller* effectively, especially in light of the Supreme Court's more recent decision in *Montgomery*. For example, in *Veal v. State*, 784 S.E.2d 403, 411 (Ga. 2017), the Georgia Supreme Court held that trial courts in *Miller* cases must make a "distinct determination *on the record* that [the defendant] is irreparably corrupt or permanently incorrigible, as necessary to put him in the narrow class of juvenile murderers for whom [a life-without-parole] sentence is proportional under the Eighth Amendment as interpreted in *Miller* as refined by *Montgomery*." (Emphasis added.) In so holding, the *Veal* Court found that "[t]he *Montgomery* majority's characterization of *Miller* . . . undermines this Court's cases indicating that trial courts have significant discretion in deciding whether juvenile murderers should serve life sentences with or without the possibility of parole." *Id.* at 411. Similarly, in *Commonwealth v. Batts*, 163 A.3d 410, 415 (Pa. 2017), the Pennsylvania Supreme Court acknowledged that, in light of *Montgomery*'s clarification of *Miller*, "procedural safeguards are required to ensure that life-without-parole sentences are meted out only to 'the rarest juvenile offenders' whose crimes reflect 'permanent incorrigibility,' 'irreparable corruption' and irretrievable depravity[.]'" The *Batts* Court held that, "in the absence of the sentencing court reaching a conclusion, supported by competent evidence, that the defendant will

12

forever be incorrigible, without any hope for rehabilitation, a life-without-parole sentence imposed on a juvenile is illegal, as it is beyond the court's power to impose." *Id.* at 435. And even before *Montgomery* was decided, the Supreme Court of Wyoming held that *Miller* required the trial court to "set forth specific findings supporting a distinction between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Sen v. State*, 301 P.3d 106, 127 (Wyo. 2013).

¶28.    The United States Supreme Court is careful to limit any procedural component of its substantive holdings "to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Montgomery*, 136 S. Ct. at 735. As such, it is true that *Miller* did not impose any specific factfinding requirement on lower courts. "However, "[t]hat *Miller* did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole." *Id.* To be clear, *Miller* established that a life-without-parole sentence is an unconstitutionally disproportionate punishment for juvenile homicide offenders whose crimes reflect transient immaturity and can be imposed only on those children whose crimes reflect permanent incorrigibility. *Id.* The United States Supreme Court left to the States the task of ensuring that their sentencing procedures satisfy this holding, and to do this, our trial courts must apply the facts of each particular case to the substantive law.

¶29.    In light of the Supreme Court's recent clarification of *Miller* in *Montgomery*, the trial

court, at a minimum, should have addressed Chandler's capacity for rehabilitation and made an on-the-record finding that Chandler was one of the rare juvenile offenders whose crime reflected permanent incorrigibility before imposing what in effect is a life-without-parole sentence. Because I believe that the trial court's resentencing of Chandler was insufficient as a matter of law, I respectfully dissent.

**KITCHENS, P.J., KING AND ISHEE, JJ., JOIN THIS OPINION.**

**KING, JUSTICE, DISSENTING:**

¶30. Because imposing a life sentence without possibility of parole on a juvenile offender is the harshest punishment permitted by law and is akin to capital punishment, I respectfully dissent with the majority's holding that the appropriate standard of review in this case is abuse of discretion. In addition, I join Chief Justice Waller's opinion that the trial court failed to address the *Miller v. Alabama* factors.[2]

¶31. The severe nature of capital-punishment cases necessitates a heightened-scrutiny standard of review. *Batiste v. State*, 184 So. 3d 290, 292 (Miss. 2016). The United States Supreme Court also has recognized the severity of sentencing a juvenile offender to life in prison without the possibility of parole and has likened juvenile life-without-parole sentences to capital punishment:

> [L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by

---

[2] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

14

a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence. As one court observed in overturning a life without parole sentence for a juvenile defendant, this sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days."

*Graham v. Florida*, 560 U.S. 48, 69–70, 130 S. Ct. 2011, 2027, 176 L. Ed. 2d 825 (2010), *as modified* (July 6, 2010) (internal citations omitted); *see also* Natalie Pifer, *Is Life the Same As Death?: Implications of Graham v. Florida, Roper v. Simmons, and Atkins v. Virginia on Life Without Parole Sentences for Juvenile and Mentally Retarded Offenders*, 43 Loy. L. Rev. 1495, 1531 (2010) ("Both execution and life without parole sentences permanently remove an individual from society by placing that person in a prison to await his or her death. . . .").

¶32. Imposition of a life-without-parole sentence for a juvenile is the "harshest possible penalty" and is permissible only for "the rarest of juvenile offenders." *Montgomery v. Louisiana*, 136 S. Ct. 718, 733-34, 193 L. Ed. 2d 599 (2016), *as revised* (Jan. 27, 2016). In fact, the Supreme Court has held mandatory life sentences for juveniles to be unconstitutional. *Miller v. Alabama*, 567 U.S. 460, 471, 132 S. Ct. 2455, 2464, 183 L. Ed. 2d 407 (2012). "Because juveniles have diminished culpability and greater prospects for reform, . . . 'they are less deserving of the most severe punishments.'" *Id.* (quoting *Graham*, 560 U.S. at 60-61. Even when juveniles commit terrible crimes, the "distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences." *Id.* at 472.

15

¶33.    Therefore, I believe that sentencing a juvenile who is "'more vulnerable . . . to negative influences and outside pressures,' including from their family and peers," to die in prison necessitates the same heightened standard as capital punishment. *Graham*, 560 U.S. at 68 (quoting *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)); *see also* *People v. Hyatt*, 891 N.W. 2d 549, 577 (Mich. App. 2016) ("[T]he imposition of a life-without-parole sentence on a juvenile requires a heightened degree of scrutiny regarding whether a life-without-parole sentence is proportionate to a particular juvenile offender, and even under this deferential standard, an appellate court should view such a sentence as inherently suspect.")). A heightened standard of review would serve only to ensure that solely the rarest and most deserving of juveniles would be sentenced to such a severe punishment.

¶34.    Accordingly, because sentencing a juvenile to die in prison is the harshest possible penalty available by law and should be imposed only in the rarest cases, I dissent and would find that a trial court's decision to sentence a juvenile to life without parole should be reviewed with the same heightened scrutiny that applies in capital-punishment cases.

**KITCHENS, P.J., JOINS THIS OPINION.**