RANDOLPH, Presiding Justice,
for the Court:
¶ 1. Brett Jones was convicted of murder for stabbing his grandfather to death. In accordance with Mississippi Code Section 97-8-21, the trial judge sentenced Jones to life imprisonment. Miss. Code Ann. § 97-3-21 (Rev.2006) (“Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary.”).[1] Jones’s conviction and sentence were affirmed by the Court of Appeals. Jones v. State (“Jones /”), 938 So.2d 312 (Miss.Ct.App.2006).
¶ 2. This Court granted Jones leave to seek post-conviction relief in the Circuit Court of Lee County. In his petition for post-conviction relief before the circuit court, Jones argued, inter alia, that, because he was fifteen years old at the time of the murder, his life sentence violated the Eighth Amendment’s prohibition against cruel and unusual punishment. The circuit court denied Jones’s motion for post-conviction relief, and the Court of Appeals affirmed that judgment. Jones v. State (“Jones II ”), 122 So.3d 725 (Miss.Ct.App.2011), reh’g denied (Apr. 3, 2012).
¶ 3. Jones then petitioned this Court for writ of certiorari, noting that two cases were pending before the United States Supreme Court which raised the issue of whether the Eighth Amendment forbids a sentence of life without parole for juveniles convicted of homicide. On June 25, 2012, *700 the Supreme Court decided Miller v. Alabama (and the companion case Jackson v. Hobbs), — U.S. -, 132 S.Ct. 2455, 188 L.Ed.2d 407 (2012). This Court granted Jones’s petition for writ of certiorari and ordered supplemental briefing regarding the application of Miller. We have limited our review to that issue.
ANALYSIS
¶ 4. Where an appeal raises a question of law, the applicable standard of review is de novo. Lambert v. State, 941 So.2d 804, 807 (Miss.2006) (citing Brown v. State, 731 So.2d 595, 598 (Miss.1999)).
¶ 5. In Miller, the United States Supreme Court held “that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders.” Miller, 132 S.Ct. at 2469 (emphasis added). The Court declined to impose a categorical bar on sentences of life without parole for juveniles, but “require[d] [the sentencing authority] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. The Miller Court identified multiple juvenile characteristics and circumstances which may exist that are precluded from consideration by a mandatory sentencing scheme:
Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfune-tional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. See, e.g., Graham v. Florida, 560 U.S. 48,130 S.Ct. 2011, 176 L.Ed.2d 825 (“[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings”); J.D.B. v. North Carolina, 564 U.S. -, -, 131 S.Ct. 2394, 2400-2401, 180 L.Ed.2d 310 (2011) (discussing children’s responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
Id. at 2468.
¶ 6. We recently addressed Miller in Parker v. State, 119 So.3d 987 (Miss.2013) (mandate not issued). Like Jones, fifteen-year-old Parker was convicted for the murder of his grandfather and sentenced to life imprisonment. Id. at 996. Preliminarily, we found that “[p]rior to Miller, our trial courts were not required to hold an individualized sentencing hearing for juveniles before imposing a life sentence.” Id. at 995. Thus, Miller imposed a new obligation with which this State must comport.[2] Id. We held that, although “murder does not carry a specific sentence of life without parole,” the State’s parole statute, *701 Section 47-7-3(l)(h),[3] rendered Parker’s life sentence “tantamount to life without parole.” Id. Therefore, our sentencing and parole scheme “contravenefd] the dictates of Miller” as it made Parker ineligible for parole absent consideration of his youth by the sentencing authority. Id. We vacated Parker’s sentence and remanded his case to the circuit court for a new sentencing hearing.[4] Id. at 997.
¶7. Parker was pending before this Court on direct appeal when Miller was announced. The United States Supreme Court has stated, “[w]hen a decision of this Court results in a ‘new rule,’ that rule applies to all criminal cases still pending on direct review.” Schriro v. Summerlin, 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). After determining that Miller imposed a new obligation, there was little question as to whether that obligation should apply if this Court found that Parker had received a mandatory sentence of life without parole. In contrast, Jones’s conviction and sentence became final in 2006, more than five years before Miller. Jones is before this Court on collateral review. Thus, the issue presented today is whether Miller applies to cases which already have become final. Stated differently, we must determine if Miller applies retroactively to cases on collateral review.
I.
¶ 8. In Teague, a plurality decision, the United States Supreme Court held that, “[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.” Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Teague Court identified two exceptions to the general bar against ret-roactivity. The Court stated,
First, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe. Second, a new rule should be applied retroactively if it requires the observance of those procedures that ... are implicit in the concept of ordered liberty.
Id. at 307 (internal citations omitted). This Court expressly has adopted Teague’s “very limited retroactive application standard.” Manning v. State, 929 So.2d 885, 900 (Miss.2006).
¶ 9. In ensuing cases, the United States Supreme Court has expounded upon the exceptions articulated in Teague. In Summerlin, the Court determined that Teague’s first exception encompassed rules “more accurately characterized as substantive rules not subject to the bar.” Summerlin, 542 U.S. at 351-352 n. 4, 124 S.Ct. *702 2519. The Court stated, “[n]ew substantive rules generally apply retroactively ... because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.” Id. at 351-52, 124 S.Ct. 2519 (internal citations omitted). Miller solely addressed the latter.
¶ 10. Although Miller did not impose a categorical ban on the punishment that the substantive law could impose, it explicitly foreclosed imposition of a mandatory sentence of life without parole on juvenile offenders. By prohibiting the imposition of a mandatory sentence, the new obligation prevents “a significant risk that a [juvenile] ... faces a punishment that the law cannot impose on him.” Id.
¶ 11. “[S]ubstantive rules ... include[ ] decisions that narrow the scope of a criminal statute by interpreting its terms.” Id. at 351-52, 124 S.Ct. 2519 (citing Bousley v. United States, 523 U.S. 614, 620-621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Prior to Miller, everyone convicted of murder in Mississippi was sentenced to life imprisonment and was ineligible for parole. Following Miller, Mississippi’s current sentencing and parole statutes could not be followed in homicide cases involving juvenile defendants. Our sentencing scheme may be applied to juveniles only after applicable Miller characteristics and circumstances have been considered by the sentencing authority. As such, Miller modified our substantive law by narrowing its application for juveniles.
¶ 12. The Legislature is the branch of government responsible for enactment of substantive law, which includes both crime and punishment. As we noted in Parker, “[t]he authority to say what constitutes a crime, and what punishment shall be inflicted is in its entirety a legislative question.” Parker, 119 So.3d at 998 (quoting Williams v. State, 708 So.2d 1358, 1361 (Miss.1998)). However, its enactments must comport with both the United States and Mississippi Constitutions. Miller explicitly prohibits states from imposing a mandatory sentence of life without parole on juveniles. Thus, Miller rendered our present sentencing scheme unconstitutional if, and only if, the sentencing authority fails to take into account characteristics and circumstances unique to juveniles. When the Miller Court announced a new obligation prohibiting the application of our existing substantive law, it modified Mississippi substantive law.
II.
¶ 13. The dissent posits that this Court should declare Section 47—7—3(l)(h) unconstitutional as applied to every juvenile. This position was rejected by the Parker Court after full and careful deliberation. See Parker, 119 So.3d 987, n. 14 (“Miller does not require this Court to declare Section 47—7—3(l)(h) per se unconstitutional as applied to juveniles.”) Declaring Section 47-7-3(l)(h) unconstitutional as applied to all juveniles would be an inordinate expansion of Miller’s holding. Application of Section 47-7-3(l)(h) to a juvenile is unconstitutional only absent consideration of the characteristics and circumstances unique to juvenile defendants by the sentencing authority.
¶ 14. To be clear, neither the sentencing statute, Section 97-3-21, nor the applicable parole provision, Section 47-7-3(l)(h), has been abrogated, as posited by the dissent. Section 97-3-21 does not violate the Miller mandate. Section 47-7-3(l)(h) cannot be applied in all cases, but can be applied constitutionally to juveniles who fail to convince the sentencing authority that Miller considerations are sufficient to prohibit its application. Therefore, in order to comply with the United States *? Constitution and to make Miller considerations more than perfunctory, we put in place a “stop-gap mechanism” which allows the sentencing authority “to annul application of Section 47 — 7—3(l)(h).” Parker, 119 So.3d 987, at 995. This mechanism enables the trial judge to nullify application of subsection (h) to ensure protection of a juvenile’s Eighth Amendment rights.
¶ 15. This mechanism does not, as the dissent suggests, allow a juvenile defendant convicted of murder to be sentenced to life without parole. While we all recognize that a life sentence for murder is tantamount to life without parole, we expressly rejected that a juvenile could be sentenced to life without parole in Parker. See Parker, 119 So.3d 987, at n. 21 (“[T]o-day’s decision only grants the trial court the authority to sentence a juvenile to ‘life imprisonment’ — the maximum sentence allowed by statute.”).
¶ 16. The dissent further posits that declaring Section 47 — 7—3(l)(h) unconstitutional as applied to all juveniles “minimizes our intrusion into any legislative function.” Diss. Op. ¶ 24. Yet, while seeking not to appropriate this legislative function, the dissent would declare a valid legislative enactment unconstitutional, even though it already has been shown that Section 47-7-3(l)(h) can be applied constitutionally to certain juveniles.
¶ 17. Finally, the dissent misconstrues the actual effect of the holding in Parker, and suggests that “the revised sentence will have no effect.” Diss. Op. ¶ 27. I doubt Mr. Jones would agree, given that today’s decision grants him an opportunity to be relieved of a mandatory life sentence. If the sentencing authority concludes, after Miller consideration, that Jones’s eligibility for parole should not be foreclosed by the parole statute, he is to be sentenced to “life imprisonment with eligibility for parole notwithstanding the present provisions of Mississippi Code Section 47-7-3(l)(h).” See supra n. 4. In that event, subsection (h) will have been annulled by the sentencing authority, and Jones will be eligible for parole subject to the general provisions of Section 47-7-3(1).
CONCLUSION
¶ 18. We are of the opinion that Miller created a new, substantive rule which should be applied retroactively to cases on collateral review. We affirm in part and reverse in part the Court of Appeals’ judgment and the trial court’s denial of post-conviction relief. We vacate Jones’s sentence and remand this case to the Circuit Court of Lee County for a new sentencing hearing to be conducted consistently with this Court’s opinion in Parker.[5] See supra n. 4.
¶ 19. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED IN PART AND REVERSED IN PART. THE SENTENCE IS VACATED, AND THIS CASE IS REMANDED TO THE CIRCUIT COURT OF LEE COUNTY FOR RESENTENCING.
WALLER, C.J., DICKINSON, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.

. Mississippi Code Sections 97-3-19 and 97-3-21 have recently been amended by the Legislature to provide for three classifications of murder: capital, first-degree, and second-degree. See 2013 Miss. Laws Ch. 555 (S.B. 2377).

. See Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ("In general ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.").

. Miss.Code Ann. § 47-7-3(l)(h) (Rev.2011) (“No person shall be eligible for parole who is convicted except that an offender convicted of only nonviolent crimes ... 'nonviolent crimes’ means a felony other than homicide. ... ”).

. In instructing the trial court on remand, this Court stated:
After consideration of all circumstances required by Miller, the trial court may sentence Parker, despite his age, to "life imprisonment.’’ See Miller, 132 S.Ct. at 2469 (“[W]e do not foreclose a sentencer’s ability to make that judgment in homicide cases....”). However, if the trial court should determine, after consideration of all circumstances set forth in Miller, that Parker should be eligible for parole, the court shall enter a sentence of "life imprisonment with eligibility for parole notwithstanding the present provisions of Mississippi Code Section 47-7-3(l)(h).”

. Our disposition in this case comports with the disposition of Miller's companion case, Jackson. Jackson was before the United States Supreme Court on collateral review. Upon remand, the Supreme Court of Arkansas remanded Jackson's case to the trial court for resentencing. Jackson v. Norris, - S.W.3d - (Ark.2013)