

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,964

### EX PARTE TERRELL MAXWELL, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. D-1-DC-08-300490
### FROM TRAVIS COUNTY

KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.

## DISSENTING OPINION

The majority correctly recounts what the Supreme Court held in *Miller v. Alabama*,[1] but I dissent from its characterization of the *Miller* rule and what that portends for the issue of its retroactivity. In my mind, the *Miller* rule is clearly procedural and therefore should not be applied retroactively. Because Terrell Maxwell's writ application alleges only that *Miller* is a new substantive rule, I begin with the following assumptions: (1) like the majority, that

---

[1] 132 S.Ct. 2455 (2012).

*Miller* is a new rule;[2] and (2) *Miller* is not a "watershed" rule of procedure subject to retroactivity.

The *Miller* Court held that statutory sentencing schemes that automatically impose a life-without-parole sentence on juvenile defendants violate the Eighth Amendment's prohibition of cruel and unusual punishment.[3] The Court's holding was informed by two lines of precedent—the categorical ban on sentencing practices imposed on a class of offenders and the mandatory imposition of capital punishment.[4] In *Roper v. Simmons*,[5] in which it concluded that the death penalty for juvenile offenders under 18 years of age was unconstitutional, and in *Graham v. Florida*,[6] in which it held that a life-without-parole sentence could not be imposed on juveniles for a nonhomicide offense, the Court "establish[ed] that children are constitutionally different from adults for purposes of sentencing" because "juveniles have diminished culpability and greater prospect for

---

[2] *See id.* at 2464, 2472 (concluding that *Roper* and *Graham* "leads to," as opposed to "compels" its decision and stating "we are breaking no new ground in these cases); *see also id.* at 2480 (Roberts, C.J., dissenting) ("If the Court is unwilling to say that precedent compels today's decision, perhaps it should reconsider that decision."). *But see id.* at 2466 (majority opinion) ("'An offender's age,' we made clear in *Graham*, 'is relevant to the Eighth Amendment,' and so 'criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed.'") (quoting *Graham v. Florida*, 560 U.S. 48, 76 (2010)).

[3] *Id.* at 2464.

[4] *Id.* at 2463–64.

[5] 543 U.S. 551 (2005).

[6] 560 U.S. 48 (2010).

reform."[7] *Miller* was also influenced by *Woodson v. North Carolina*,[8] which held that mandatory imposition of the death penalty is unconstitutional because it failed to allow for individualized sentencing decisions.

What the *Miller* Court found unconstitutional in these sentencing schemes is how a life-without-parole sentence for juveniles is imposed. In holding that these statutes unconstitutionally fail to give a factfinder the opportunity to consider the unique characteristics of a defendant's youth, the Court essentially removed the term "mandatory" from the statutory language. The punishment Miller received was life without parole, not "mandatory life without parole." Pursuant to Alabama law, Miller's life-without-parole sentence was imposed mandatorily—in other words, without discretion from the sentencing authority. I am unaware of any defendant being sentenced to "mandatory life without parole," at least not in Texas. The sentence is life without parole. This is an obvious observation, but it is a distinction I believe the majority misses when it claims that "a juvenile's *mandatory* 'life without parole' sentence is outside the ambit of the State's power."[9] *Miller* did not prohibit life-without-parole sentences for juveniles; it prohibited imposing them mandatorily.

This is not merely semantic. Describing *Miller*'s holding this way recognizes

---

[7] *Miller*, 132 S.Ct. at 2464.

[8] 428 U.S. 280 (1976).

[9] *Ante*, op. at 13 (emphasis in original).

precisely how the Court has drawn the line between substantive rules that are retroactive and procedural rules that are not. The Court's opinion in *Schriro v. Summerlin*,[10] which defined these terms, indicates that the holding in *Miller* did not announce a substantive rule. In *Summerlin*, the issue before the Court was whether or not *Ring v. Arizona*,[11] which found unconstitutional Arizona's statute permitting the finding of necessary aggravating factors to impose the death penalty by a judge instead of a jury,[12] applies retroactively to cases already final on direct review.[13] The Court began by repeating its familiar retroactivity analysis:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances. New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, . . . as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish . . . . Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. [14]

Procedural rules, on the other hand, are generally not applied retroactively because "[t]hey do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure

---

[10] 542 U.S. 348 (2004).

[11] 536 U.S. 584 (2002).

[12] *Summerlin*, 542 U.S. at 350–51.

[13] *Id.* at 349.

[14] *Id.* at 351–52 (citations omitted).

might have been acquitted otherwise."[15]  "[O]nly a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of criminal proceedings" are given retroactive effect.[16]  Substantive rules "alter[] the range of conduct or the class of persons that the law punishes"; procedural rules "regulate only *the manner of determining the defendant's culpability.*"[17]

By these definitions, the *Miller* rule is procedural—it regulates the manner of imposing a life-without-parole sentence for juveniles.  *Miller* did not conclude that a life-without-parole sentence imposed on a juvenile is unconstitutional and therefore did not change in any way the "class of person that the law punishes."  On this issue, the *Miller* Court's language could hardly be clearer: "we do not consider [petitioners'] alternative arguments that the Eighth Amendment requires a categorical bar on life without parole for juveniles";[18] "Although we do not foreclose a sentencer's ability to make [a life-without-parole] judgment in homicide cases, we require it to take into account how children are different . . .";[19] and "Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* and *Graham.*"[20]

---

[15]  *Id.* at 352.

[16]  *Id.* (internal quotations omitted).

[17]  *Id.* at 353 (emphasis in original).

[18]  *Miller*, 132 S.Ct. at 2469.

[19]  *Id.*

[20]  *Id.* at 2471.

From the number of decisions from other jurisdictions taking a position on *Miller*'s retroactivity identified in the majority's research, the Court adopts, without explanation, the unpublished reasoning of a New Hampshire trial judge in holding that *Miller* is a substantive rule.[21] I find that reasoning unpersuasive. The portion of the judge's ruling the majority adopts and reproduces in its opinion is the judge's attempt to distinguish *Summerlin*'s treatment of *Ring*, which the Court held to be non-retroactive, from the question of *Miller*'s retroactivity. The judge began by stating that "unlike *Ring*, *Miller* does not alter the manner of determining culpability. Instead *Miller* alters the range of outcomes available for certain criminal conduct."[22] These statements miss the direct correlation between the manner of determining culpability and the resulting punishment outcome. It is *Miller*'s alteration of the manner—or procedure—of making punishment decisions that makes a wider range of potential punishment outcomes possible.

In rejecting the argument that *Miller* announced a procedural rule, the judge concluded that, "Before *Miller*, there was no method to determine whether a juvenile's conduct was punishable by life in prison without parole—it was automatic and mandatory. After *Miller*, there is a range of new outcomes—discretionary sentences that can extend up to life without the possibility of parole but also include the more lenient alternatives."[23] Even if we dismiss

---

[21] *Ante*, op. at 14.

[22] *Tulloch v. Gerry*, Trial Order, Nos. 12-CV-849, 13-CV-050, 13-CV-085, 08-CR-1235, 2013 WL 4011621, *7 (N.H. Sup. Ct. Jul. 29, 2013).

[23] *Id.*

the judge's implicit acknowledgment that *Miller* created a new, constitutional procedure for punishment decisions of a juvenile, the possibility of lesser sentences being imposed after *Miller* is not evidence of a substantive rule. Despite the attempts, the judge's reasoning cannot avoid *Summerlin*'s instruction that substantive rules are those that alter the range of conduct or the class of persons that the law punishes.[24] The range of punishable conduct and the class of juveniles eligible to receive a life-without-parole sentence are no smaller after *Miller*. It is not "a punishment that the law cannot impose on him."[25] After considering the defendant's youth, a factfinder is still able to impose a life-without-parole sentence. Indeed, the Court's opinion today states that Maxwell may still be sentenced to life-without-parole upon further sentencing proceedings.[26] The mere possibility that a factfinder may in certain cases impose a lesser sentence is irrelevant for purposes of determining *Miller*'s retroactivity.

For these reasons, I would hold that *Miller* is not retroactive and cannot support Maxwell's request for relief. Accordingly, I would deny his application for a writ of habeas corpus.

FILED: March 12, 2014

PUBLISH

---

[24] *See Summerlin*, 542 U.S. at 353.

[25] *Ante*, op. at 11 (citing *Jones v. State*, 122 So.3d 698, 702 (Miss. 2013).

[26] *Id.* at 15.