# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00700-COA

KENNETH CLEMONS A/K/A KENNETH C. CLEMONS, JR.

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT: 02/04/2022
TRIAL JUDGE: HON. CALEB ELIAS MAY
COURT FROM WHICH APPEALED: NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: CASEY BONNER FARMER
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED - 04/16/2024
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., WESTBROOKS AND SMITH, JJ.

### WILSON, P.J., FOR THE COURT:

¶1. In 1996, then-fourteen-year-old Kenneth Clemons shot and killed three people. Following a jury trial, Clemons was convicted of three counts of murder, and the court imposed three mandatory life sentences. Under Mississippi law, Clemons was and remains ineligible for parole. In 2012, the United States Supreme Court held that a mandatory life-without-parole sentence for a defendant who was under the age of eighteen at the time of his crime violates the Eighth Amendment to the United States Constitution. *Miller v. Alabama*, 567 U.S. 460, 489 (2012). Clemons filed a motion for post-conviction relief, seeking to be resentenced to life imprisonment with eligibility for parole. The trial court held an

evidentiary hearing, considered the factors discussed in *Miller, id.* at 477-78, and denied relief. Clemons appeals, and we find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On July 15, 1996, Clemons and his brother, Bobby, murdered three members of the Mississippi Band of Choctaw Indians—twenty-one-year-old Cecil Amos, twenty-three-year-old Frankie Amos, and twenty-three-year-old Shirley Ann Davis. Timothy Sudberry testified that Clemons and Bobby planned the murders earlier in the day. Clemons, Bobby, and Sudberry were riding in Bobby's car when Bobby "asked [Clemons] did he want to go kill them Choctaws." Clemons responded affirmatively and volunteered to shoot the victims himself. The Clemons brothers believed that the victims had "about four thousand dollars on them" and intended to rob them.

¶3.     Clemons, Bobby, and Sudberry later met the victims at the Nanih Waiya Cave to "drink some beer." Clemons approached the victims' car while concealing a .25-caliber automatic pistol. He asked Cecil for ten dollars Cecil owed him, but Cecil said he did not have the money. Clemons then "pointed [his pistol] straight at [Cecil's] forehead" and shot Cecil in the head. Clemons later claimed he "fired the pistol [at Cecil] by accident." Next, Clemons intentionally shot Frankie, a paraplegic man, in the chest. Finally, Clemons shot Shirley Ann, who was "screaming and hollering" in fear. Bobby also shot one or more of the victims with a 9-millimeter pistol.[1] Cecil, Frankie, and Shirley Ann sustained three, five, and two gunshot wounds, respectively, and all died as a result. Clemons and Bobby then returned

---

[1] Clemons had borrowed the 9-millimeter pistol from a friend earlier in the day and then gave it to Bobby.

to Bobby's car, where Sudberry had remained during the shooting, and drove away.[2] Clemons was arrested three days later and confessed to his role in the murders.

¶4.     A Neshoba County jury found Clemons guilty of three counts of murder. The court imposed three life sentences, as required by statute. Miss. Code Ann. § 97-3-21 (Rev. 1994). By law, Clemons was ineligible for parole. Miss. Code Ann. § 47-7-3(1)(g) (Supp. 1995). The Mississippi Supreme Court affirmed Clemons's convictions on direct appeal. *Clemons v. State*, 733 So. 2d 266, 267 (¶¶1-2) (Miss. 1999).[3]

¶5.     Thirteen years later, the United States Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. The Court held that the Constitution requires a sentencing judge or jury to consider a juvenile offender's age and related characteristics before sentencing him to life imprisonment without eligibility for parole. *See id.* at 478, 483. Thereafter, the Mississippi Supreme Court held that *Miller* applies retroactively to cases that became final prior to *Miller*. *Jones v. State*, 122 So. 3d 698, 703 (¶18) (Miss. 2013); *accord Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016). In 2014, a panel of the Mississippi Supreme Court granted Clemons leave to file a motion for post-conviction relief in the trial court based on *Miller*.

¶6.     In 2020, Clemons filed a motion to vacate his sentence in the trial court. In 2021, the

---

[2] According to Sudberry, as they drove away, Bobby asked Clemons "did he get the money," and Clemons answered, "[N]o, he thought Bobby was supposed to be getting it."

[3] Bobby was also convicted of three counts of murder. *Clemons v. State*, 732 So. 2d 883 (Miss. 1999). Sudberry pled guilty to being an accessory after the fact. *Clemons*, 733 So. 2d at 271 (¶18).

trial court held an evidentiary hearing on Clemons's motion. Clemons did not testify at the hearing but presented the testimony of his mother and forensic psychologist Dr. Criss Lott. The district attorney orally joined Clemons's motion, conceding that Clemons should be granted parole eligibility under *Miller*.

¶7.     However, the trial court entered an opinion and final judgment addressing the "*Miller* factors" and denying Clemons's request for relief. Clemons filed a motion for a new trial or reconsideration, which the trial court denied, and a notice of appeal. On appeal, Clemons argues that the trial court erred by denying him parole eligibility under *Miller*.

**ANALYSIS**

¶8.     As interpreted by the United States Supreme Court in *Miller*, the Eighth Amendment to the United States Constitution prohibits *mandatory* life-without-parole sentences for defendants who are under the age of eighteen at the time of their crimes. *Miller*, 567 U.S. at 470. However, *Miller* and its progeny "allow[] *discretionary* life-without-parole sentences for those offenders." *Jones*, 593 U.S. at 103. The Supreme Court has "mandated only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a life-without-parole sentence." *Id.* at 108 (quotation marks omitted). "[T]o separate those juveniles who may be sentenced to life without parole from those who may not," the court must afford the defendant "[a] hearing where youth and its attendant characteristics are considered as sentencing factors[.]" *Id.* at 111 (quoting *Montgomery*, 577 U.S. at 210). Following that hearing, the sentencer should consider the "*Miller* factors," which include (1) the defendant's "chronological age and the hallmark

4

features among that age"; (2) the defendant's "family and home environment"; (3) the "circumstances of the offense"; (4) the defendant's "ability to deal with the legal system" (i.e., whether "he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth"); and (5) the "possibility of rehabilitation." *Alexander v. State*, 333 So. 3d 19, 23 (¶17) & n.3 (Miss. 2022). However, *Miller* and its progeny do "not impose a formal factfinding requirement," *Jones*, 593 U.S. at 112 (quoting *Montgomery*, 577 U.S. at 211), and "sentencers are afforded 'wide discretion in determining the weight to be given relevant mitigating evidence.'" *Alexander*, 333 So. 3d at 27 (¶33) (other quotation marks omitted) (quoting *Jones*, 593 U.S. at 108). And while the sentencer must consider the *Miller* factors and the evidence relevant to those factors, "the burden rests with the juvenile offender to convince the [sentencer] that *Miller* considerations are sufficient to prohibit a sentence of life without parole." *Wharton v. State*, 298 So. 3d 921, 927 (¶25) (Miss. 2019) (quotation marks omitted).

¶9.    "[T]here are two applicable standards of review in a *Miller* case. First, whether the trial court applied the correct legal standard is a question of law subject to de novo review." *Chandler v. State*, 242 So. 3d 65, 68 (¶7) (Miss. 2018). "If the trial court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion." *Id.*

¶10.    Here, the trial court held a hearing to consider the *Miller* factors and any evidence relevant to Clemons's motion. At that hearing, Clemons's mother, Sherry, testified that Clemons's father "was an alcoholic" and "was very abusive sometimes." She felt that at the time of the murders, Clemons was "easily . . . influenced by others" and "looked up to

5

[Bobby]." Sherry testified, "Bobby kind of made the decisions. [Clemons] kind of followed." Sherry believed Clemons had matured in prison and could "make his own decisions" now. She felt Clemons had been rehabilitated and stated that "[h]e would have a place to live" if he was ever paroled. Sherry testified that Clemons had never directly admitted his guilt to her, but "he hated it happened. He hated that he was caught up in this where these murders took place."

¶11. Dr. Criss Lott, a forensic psychologist, interviewed Clemons eight times as part of his "*Miller* evaluation," though he did not review the transcript of Clemons's trial. Lott began his testimony with a general discussion of the research and neuroscience regarding adolescents' impulsiveness and immaturity. Lott also discussed Sherry's description of Clemons's home life prior to the murders. Lott acknowledged that before the murders, Clemons had been suspended from school three times for fighting and had been referred to a community mental health center for counseling. Lott's "impression" was that Clemons was "of low average intelligence." He testified that Clemons now "acknowledges" his involvement in the murders and "recognizes this his behavior was quite impulsive and quite harmful." Lott conceded that Clemons "has been aggressive in prison" and has received "a lot of RVRs" (rule violation reports), especially early in his incarceration, including assaults and some infractions that were "sexual" in nature. Lott testified, "[H]e does have a lot of RVRs. There's no mixing words there. He's had all sorts of rule infractions." But Lott also noted that Clemons's RVRs had decreased over time, especially in recent years.

¶12. Lott opined that there was a "potential for" or "possibility of rehabilitation" in

6

Clemons's case, stating: "I don't see that there's sufficient data to indicate otherwise.  It's a rule out, rule in.  I don't think that I can rule out the fact that people, if given the opportunity, can't do it.  I think he may be certainly able to do that."  His opinion was based in part on his belief that Clemons was "not . . . the ringleader" in the three murders.  Lott explained, "I didn't get the sense that he was responsible for driving or going anywhere and . . . planning any kind of assault . . . .  I didn't get that sense at all from him. . . .  I didn't get the sense that he was the one that was planning to do this or . . . was dictating what should be done . . . .  Now, . . . if he had in fact . . . acquired a weapon and driven there with the intent then . . . that would change my opinion."

¶13.    Following the evidentiary hearing, the trial court entered an order applying the *Miller* factors and denying Clemons's request for relief.  Considering Clemons's age at the time of the murders, the trial court agreed with Lott's testimony that a typical or average fourteen-year-old offender would exhibit "hallmark features" of "immaturity," "impetuosity," and a "potential failure to appreciate the risks and consequences."  The court also agreed with Lott that such characteristics would "favor sentences _with_ eligibility for parole" in many cases involving fourteen-year-old offenders.  However, the court found that Lott's specific opinions regarding Clemons were "less reliable" because Lott "did not review the trial record and transcript" and instead relied on Clemons's own account of the murders, which apparently minimized Clemons's role.  The court further stated:

> In reviewing the trial record and transcript, this Court found evidence that Kenneth Clemons pointed a gun directly at three individuals, one of whom was paraplegic, and shot all three.  This Court also found evidence that Kenneth Clemons was [complicit] in obtaining a gun, had a premeditated purpose to kill

a person, and had ample opportunities throughout the day in question to stop this premeditated course of action. This Court found no evidence showing that the homicides occurred as the result of a heated argument or were otherwise due to any immediately spontaneous circumstances.

. . . .

The Court acknowledges that strictly using an objective standard as to all fourteen year olds may not favor life without parole; however, in applying a subjective standard to a fourteen year old Kenneth Clemons as he was nearly thirty years ago, this Court finds that the three life without parole sentences were and are still appropriate given the weight and reliability of the evidence from the hearing and from the record as applied under the present state and scope of the law.

¶14. Regarding Clemons's home environment, the court acknowledged Sherry's testimony that Clemons's father was an abusive alcoholic, but the court found that such evidence was "not determinative" under *Miller*. With respect to the circumstances of the offense, the court noted some evidence that eighteen-year-old Bobby had "some general sibling influence" over fourteen-year-old Clemons. However, the court "could find little evidence that the influence of Bobby or any other person overly pressured . . . Clemons to commit the homicides on the day in question." Indeed, the court noted there was "no evidence that Bobby . . . had ever committed a criminal act nor influenced . . . Clemons to commit a criminal act prior to the homicides." The court found that "the circumstances of the crime . . . overwhelmingly support the three sentences of life without parole being applied in this case."

¶15. The trial court found no evidence that Clemons might have been charged with or convicted of lesser crimes but for his youth. The court noted that the original trial judge in Clemons's case found that Clemons's confession to law enforcement was voluntary and admissible, and the Mississippi Supreme Court affirmed that ruling on appeal. *See Clemons*,

8

733 So. 2d at 268-70 (¶¶6-14). The court found "no evidence to support anything less than the three murder charges" for which Clemons was indicted and convicted.

¶16. Finally, the trial court found that based on Lott's testimony and expert opinions, there was a "remote possibility" that fourteen-year-old Clemons could have been rehabilitated. However, the court again emphasized that Lott's opinion was primarily based on the characteristics of a typical fourteen-year-old offender rather than anything specific to Clemons. The court also found that the evidence was insufficient to show that present-day Clemons could be rehabilitated. Having considered "all . . . evidence applicable to the *Miller* factors," the trial court found that Clemons's original sentence was appropriate and that *Clemons* was not entitled to parole eligibility under *Miller*.

¶17. On appeal, Clemons argues that the trial court erred by denying relief. However, the trial court afforded Clemons a full and fair evidentiary hearing and applied the correct legal standard. Moreover, substantial evidence supports the trial court's findings of fact, and the trial court applied the *Miller* factors in a reasoned, non-arbitrary fashion. *Jones v. State*, 285 So. 3d 626, 632 (¶17) (Miss. Ct. App. 2017) ("The sentencing judge must consider the factors discussed in *Miller*, and the judge must apply those factors in a non-arbitrary fashion." (quotation marks omitted)), *aff'd*, 593 U.S. 98 (2021). Therefore, the trial court did not abuse its discretion by finding that Clemons failed to meet his burden of persuasion.[4]

¶18. **AFFIRMED.**

---

[4] *Chandler*, 242 So. 3d at 68 (¶7) (holding that we review the trial court's ultimate decision under *Miller* only "for an abuse of discretion"); *Wharton*, 298 So. 3d at 927 (¶25) (holding that the defendant bears the burden to persuade the court that he is entitled to relief under *Miller*).

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**