# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2025

Lyle W. Cayce
Clerk

———————

No. 24-60456

———————

Leon Lamar Trotter,

*Petitioner—Appellant*,

*versus*

Chris Loden, *Warden, Marshall County Correctional Facility*; Burl Cain, *Commissioner, Mississippi Department of Corrections*,

*Respondents—Appellees*.

———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:23-CV-2

———————————————————

Before King, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Leon Lamar Trotter received a mandatory life-without-parole sentence for a crime committed when he was 17 years old. After the Supreme Court deemed such mandatory sentences for minors unconstitutional in *Miller v. Alabama*, 567 U.S. 460 (2012), Trotter requested an evidentiary and/or resentencing hearing on his motion for post-conviction relief. He received this hearing, after which the Mississippi circuit court, upon

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60456

consideration of the *Miller* factors, determined that he was ineligible for a sentence with the possibility of parole. The state appellate court and district court affirmed, and this court then granted a certificate of appealability to review whether Trotter's constitutional rights were violated because his sentence was not first vacated and he was not, in his view, given a discretionary sentencing procedure as required by *Miller*.

For the following reasons, we too AFFIRM.

## I.

We provide a factual and procedural background, followed by a summary of the relevant caselaw.

## A.

In 2004, a jury convicted Leon Lamar Trotter of murder for shooting Ricky Hill, who, after left lying in his doorway for 17 hours, was taken to a hospital and later succumbed to his injuries. Trotter was 17 years old at the time of the shooting. Under Mississippi Code §§ 47-7-3(1)(h), 97-3-21, Trotter was automatically sentenced to life without the possibility of parole (LWOP). The Mississippi Court of Appeals affirmed Trotter's murder conviction and life sentence in 2008.

Trotter filed an Application for Permission to File a Motion for Post Conviction Relief in May 2012, which argued ineffective assistance of trial counsel and witness recantation claims. On July 31, 2012, the Mississippi Supreme Court granted the application. One year later, Trotter, through his then-counsel Jane Tucker, filed an Application for Leave to File Motion: Supplemental Motion for Post-Conviction Relief. In light of the Supreme Court's 2012 decision in *Miller*, Trotter requested to add a *Miller* claim to those claims brought in his original Application and Motion. He argued that he is "entitled to relief on the claims he has raised in his Motion as a matter

of law and on the record of this case as it now stands," or, "[a]lternatively, . . . [he] is entitled to an evidentiary hearing . . . where Trotter will be provided with an opportunity to conduct discovery and prove the claims raised in his Supplemental Motion." The Mississippi Supreme Court summarized Trotter's application for supplemental motion to be a request "that this Court vacate his life sentence and remand this case for a new sentencing hearing or, alternatively, that this Court grant leave to file a motion for post-conviction collateral relief in the circuit court." The court granted the application, "insofar as Trotter should be granted leave to file his motion for post-conviction collateral relief in the Circuit Court of Humphreys County."

In 2016, Trotter filed a pro se post-conviction motion in the Circuit Court of Humphreys County. Tucker then filed a second post-conviction motion on Trotter's behalf, which argued that Trotter was entitled to resentencing based on *Miller* and should be sentenced to life with parole. In 2017, pro bono counsel, who is currently representing Trotter, entered an appearance.

Trotter's pro bono counsel filed a Motion to Set Evidentiary Hearing And/Or Resentencing Hearing in April 2018. The motion sought "post-conviction relief on three grounds: (1) ineffective assistance of counsel; (2) a new trial based on the recanted testimony of [Alvin] Pittman[1] . . . and (3) resentencing based on *Miller*." While the motion argued for an evidentiary hearing based on the first and second grounds, it did not base any argument for an evidentiary hearing on the *Miller* claim. However, the conclusion of the motion requested that the "Court rule upon, and grant, Trotter's request for limited discovery, and then order an evidentiary hearing on Trotter's motion for post-conviction relief." On May 30, 2018, the circuit court

---

[1] Alvin Pittman was present at the shooting and identified Trotter as the shooter. He pled guilty to manslaughter but later confessed to the killing of Hill in a 2009 affidavit.

granted the evidentiary and/or resentencing hearing motion "on [Trotter's] claims for a new trial, alleged ineffective assistance of counsel, and resentencing under *Miller*." In the order, the court explained that, "[c]onsidering *Miller* and *Parker*,[2] the Court finds that Trotter is entitled to a new sentencing hearing in which the consideration of all circumstances required by Miller [*sic*] are weighed as factors in determining his sentence."

On September 24 and 28, 2018, the circuit court held its hearing. During opening argument, Trotter's counsel made the following statement:

> There are really three issues before the Court. The first issue is, we believe Mr. Trotter must be resentenced under the Miller versus Alabama decision . . . . He was convicted with life without possibility of parole which has been subsequently ruled in [*Miller*] to be unconstitutional, which you don't need an evidentiary hearing for that. That matter is [ripe] for your consideration based on the law and some of the things we submitted to Your Honor.

After not proffering additional evidence probative of *Miller* during the hearing, Trotter's counsel made the following statement in their closing:

> Mr. Trotter's seeking three grounds of relief. The first is that he must be resentenced [and] his current sentence vacated because at the time of his crime he was a juvenile and he was convicted of murder without the possibility of parole. And subsequent law specifically the Miller versus Alabama case, by the United States Supreme Court has ruled that in all but the most extreme circumstances such as [*sic*] sentence for a juvenile is unconstitutional. So at a minimum, whatever happens here today on these other issues, the Court to be consistent with Miller versus Alabama must vacate the prior sentence and reinstate another sentence which give, convicts Mr. Trotter of murder with the possibility of parole. Obviously

---

[2] *Parker v. State*, 119 So. 3d 987 (Miss. 2013).

No. 24-60456

> that doesn't mean he gets out, it just means that he is eligible
> for parole according to the parole system. So that's the first
> issue, Your Honor. And I don't think that you need any of the
> evidence that you've heard in the hearing on Monday or the
> hearing today to decide that. You can decide all of that as a
> matter of law and in fact I don't think there's much legal
> argument that—that that shouldn't be the result.

The government then stated in its closing argument that "the sentencing of the Court to life without the possibility of parole would be reasonable in this particular case. And it would be accepted according to case law." Trotter's counsel argued in his rebuttal that Trotter's situation is not one of the "extremely, extremely, extremely rare circumstances" where a minor is sentenced to life without parole. He continued:

> In fact, court's [*sic*] all across this state are overturning these
> sentences left and right. . . . [T]hose court decisions [are] in
> exactly the position where you are, where those courts have
> held that the sentence must be vacated and a new sentence
> imposed. Now, the sentence is not that Mr. Trotter goes free.
> The sentence is only that he serves with the possibility of parole
> and that he's eligible for parole. The – The law is clear. The
> United States Supreme Court, trial courts all across this state
> have held that that these cases you just can't try to impose that
> sentence on a juvenile, unless they're extremely rare
> circumstances and they are not here.

On November 21, 2018, the circuit court denied Trotter post-conviction relief. In its order, the court recited the factors it had to consider under *Parker v. State*, 119 So. 3d 987 (Miss. 2013), which adopted the *Miller* factors for juvenile sentencing, and then explained why Trotter did not meet those factors. It concluded that, "having considered the *Miller* factors, . . . [Trotter] does not qualify as a juvenile entitled to a sentence making him

eligible for parole consideration." Therefore, "Trotter's request to be resentenced [wa]s denied."

The Mississippi Court of Appeals affirmed the lower state court. *See Trotter v. State*, 353 So. 3d 484, 492–97 (Miss. Ct. App. 2022). It explained that in *Jones v. State*, 122 So. 3d 698 (Miss. 2013), decided before Trotter's hearing, the state "supreme court held that a sentence of life without parole 'can be applied constitutionally to juveniles who fail to convince the sentencing authority that *Miller* considerations are sufficient to prohibit its application.'" *Trotter*, 353 So. 3d at 495 (quoting *Jones*, 122 So. 3d at 702). The appellate court then determined, based on the record, that Trotter had received a *Miller* hearing and failed to make the necessary showing. Therefore, the circuit court did not "abuse its discretion in denying Trotter's request to be resentenced to life without the possibility of parole." The Mississippi Supreme Court denied Trotter's petition for writ of certiorari on January 4, 2023.

Trotter then sought federal habeas relief from the United States District Court for the Northern District of Mississippi, under 28 U.S.C. § 2254. He argued that the Mississippi state courts violated his constitutional rights by not vacating his sentence and affording him a discretionary sentencing procedure, in violation of United States Supreme Court precedent. He also argued that Mississippi courts violated his constitutional rights by relying on caselaw that was decided after his September 2018 hearing to deny him post-conviction relief.

A United States Magistrate Judge issued a Report and Recommendation (R&R) that the petition be denied because (1) the circuit court was not required to vacate Trotter's sentence, (2) Trotter did receive a discretionary sentencing hearing, and (3) his constitutional rights were not

violated by application of state law that was adopted after his hearing. Trotter filed objections to the R&R.

On August 2, 2024, the district court entered an Order and Final Judgment denying Trotter's petition for a writ of habeas corpus and denying a certificate of appealability. The district court explained that, *inter alia*, "because *Montgomery*[ *v. Louisiana*, 577 U.S. 190 (2016)] was decided before Trotter's September 2018 hearing and clarified that *Miller* does not require states to relitigate sentences when it is applied retroactively, the Mississippi courts had clearly established federal law decided before the September 2018 hearing to support their decision not to vacate Trotter's sentence." And contrary to Trotter's assertion that he never received "any such sufficient procedure," the district court agreed with the magistrate judge that "while Trotter may have wished to provide more evidence relevant to his *Miller* claim, such does not change that he was afforded the opportunity for resentencing under *Miller* at the September 2018 hearing."

This court then granted Trotter's motion for a certificate of appealability, in which he raised the same three issues as in his appeal brief.

**B.**

In 2012, the Supreme Court decided *Miller v. Alabama*, in which it held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. 460, 479 (2012). The Court explained that it was the mandatory aspect of these juvenile LWOP sentences that made them unconstitutional, because a "sentencer [must] have the ability to consider the 'mitigating qualities of youth.'" *Id.* at 476 (citation omitted). The Court did not "foreclose a sentencer's ability to" give an LWOP sentence; it simply required that the sentencer "take into account how children are different,

and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

Four years later, the Supreme Court gave *Miller* retroactive effect in *Montgomery*. There, the Court explained that "[g]iving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." 577 U.S. at 212. It further explained that the procedure *Miller* prescribes is "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors . . . to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* at 210 (quoting *Miller*, 567 U.S. at 465). "[P]risoners . . . must be given the opportunity to show their crime did not reflect irreparable corruption . . . ." *Id.* at 213.

In 2021—although after Trotter's hearing—the Supreme Court decided *Jones v. Mississippi*, holding that a sentencer who imposes an LWOP sentence does not need to "make a separate factual finding that the defendant is permanently incorrigible." 593 U.S. 98, 100 (2021). *Jones* further illuminated *Miller* and *Montgomery*, explaining that "[t]he key assumption of both *Miller* and *Montgomery* was that discretionary sentencing allows the sentencer to consider the defendant's youth, and thereby helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age." *Id.* at 111–12. "[A] discretionary sentencing procedure suffices to ensure individualized consideration of a defendant's youth." *Id.* at 118.

## II.

When reviewing a denial of habeas relief, this court reviews the district court's factual findings for clear error and issues of law *de novo*. *Moore v.*

*Vannoy*, 968 F.3d 482, 485 (5th Cir. 2020). Under the Antiterrorism and Effective Death Penalty Act, which governs this case, "habeas relief 'shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless' the state court adjudication '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedent." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The highly deferential standard for evaluating a state court's ruling under § 2254(d) requires that the state court decision be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

### III.

Trotter presents three issues to this court: (1) his constitutional rights were violated when Mississippi courts required him to prove that he constitutionally could not have been sentenced to life without possibility of parole, rather than vacating his sentence and affording him a discretionary sentencing procedure; (2) his constitutional rights were violated when Mississippi state courts and the District Court for the Northern District of Mississippi required him to follow a procedure contrary to established law and based on a state court holding not yet issued at the time he was denied relief; and (3) his constitutional rights were violated when Mississippi courts failed to give him a discretionary hearing, in violation of *Miller*.

We address each issue in turn.

No. 24-60456

## A.

Trotter argues that because he was given a mandatory LWOP sentence for a crime committed when he was a juvenile, his sentence was unconstitutional under *Miller*. Therefore, he argues, his sentence should have been vacated, followed by "a discretionary sentencing procedure in which the sentencing authority would weigh the facts of Trotter's youth in deciding whether he deserved a life sentence but with the possibility of parole." But instead, he claims, the Mississippi state circuit court improperly reviewed his sentence for its constitutionality, and found that Trotter had not upheld his burden to show the sentence was unconstitutionally imposed. Such process, according to Trotter, violated *Miller* and its progeny.

Trotter is correct that *Miller* indeed held that sentences like his—a mandatory LWOP sentence given to him when he was under 18 at the time of his crime—are unconstitutional. But he is incorrect that his unconstitutional sentence automatically triggered a vacatur and resentencing hearing. *Miller* made clear that the constitutional violation was not all juvenile LWOP sentences, it was the *mandatory* LWOP sentences for juveniles, because imposing a mandatory LWOP sentence on juveniles foreclosed discretion in considering the attenuating characteristics of youth. *Miller*, 567 U.S. at 480 ("Although we do not foreclose a sentencer's ability to make that judgment [of LWOP] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."). *Montgomery* then clarified that for these unconstitutional sentences, a court is not required to "relitigate sentences," but must provide "a hearing where 'youth and its attendant characteristics' are considered as sentencing factors . . . to separate those juveniles who may be sentenced to life without parole from those who may not." *Montgomery*, 577 U.S. at 211, 212. Thus, contrary to Trotter's argument, *Miller* and *Montgomery* do not require both a vacatur and

reevaluation of his sentence; they only require the latter. *See Jones*, 593 U.S. at 111 ("On the question of what *Miller* required, *Montgomery* was clear: 'A hearing where youth and its attendant characteristics are considered as sentencing factors . . . .'" (quoting *Montgomery*, 577 U.S. at 210)).

Moreover, because *Miller* explained that juvenile LWOP sentences can be constitutional if given pursuant to a discretionary hearing, Trotter's LWOP sentence may have nonetheless been deemed constitutional once his "youth and its attendant characteristics" were considered. *See Miller*, 567 U.S. at 465; *see also Jones*, 593 U.S. at 118 ("[A] discretionary sentencing procedure suffices to ensure individualized consideration of a defendant's youth."). And the state court hearing provided a discretionary hearing by giving Trotter an opportunity to show that, upon an individualized consideration of the *Miller* factors of his youth, he should be resentenced to life with the possibility of parole. Indeed, that was precisely the opportunity for which Trotter asked. Therefore, the evidentiary hearing complied with clearly established federal law. *See Montgomery*, 577 U.S. at 213 ("[P]risoners like [Trotter] must be given the opportunity to show their crime did not reflect irreparable corruption . . . .").

## B.

The Appellees argue that the second issue—that Trotter's rights were violated when the state courts and the district court imposed procedures contrary to established law and based on a subsequent state court holding— is a "state-law claim." Further, Appellees argue that this claim is (1) beyond the scope of the Certificate of Appealability (COA), and (2) non-cognizable on federal habeas review. First, they contend that the COA granted by this court limited the appeal to Trotter's first issue because it stated that "his motion for a COA, arguing that his mandatory life sentence to life in prison was unconstitutional under *Miller* and required a de novo resentencing not

11

merely a hearing related to his petition for post-conviction relief, is GRANTED." Second, they quote *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989) to provide that the "mere 'alleged violation of a state procedural rule' that 'is not a constitutional violation or a violation of federal law' does not state 'a cognizable ground for habeas relief.'" Here, they posit, Trotter alleges that he was required to follow a procedure contrary to established law because he was held to a state court holding not yet issued, but "he identifies no *federal* constitutional right that the state courts could have violated."

We find that this second issue falls within the COA and is cognizable on federal habeas review. Trotter's motion for a COA included this issue, and the COA granted the motion. Although the court's summarization of the motion more closely aligns with Trotter's first issue, the order declared that "Trotter has made the requisite showing," and granted his motion, which included this precise issue, without any qualification. As to federal habeas review, Trotter correctly explained that "the Mississippi courts' [alleged] denial of those procedural processes[, namely, a discretionary sentencing process,] deprived Trotter of the federal constitutional protections [under *Miller* and *Montgomery*] to which he was constitutionally entitled." Therefore, this is not, as Appellees put it, a mere alleged violation of a state procedural rule. Thus, we may proceed to the merits.

Trotter argues that the Mississippi Court of Appeals, and later the district court, held Trotter to the procedure established in *Wharton v. State*, 298 So. 3d 927 (Miss. 2019), which was decided a year after Trotter's evidentiary hearing and "held, for the first time, that *Miller*'s procedural requirement can be satisfied by holding an evidentiary hearing in the post-conviction matter, rather than by vacating the mandatory life-without-parole sentence and holding a new sentencing hearing." Thus, Trotter claims, he was impermissibly held to a standard that did not exist at the time of his hearing, when instead his sentence should have been vacated in conjunction

with every reported Mississippi appellate decision at the time of his hearing. For the following reasons, we do not find Trotter's argument persuasive.

To start, neither the state appellate court nor the district court held Trotter to the procedure established in *Wharton*. The state appellate court acknowledged that *Wharton* "was handed down after Trotter's hearing," and then explained that the rule the circuit court applied "was established in another case well before Trotter's hearing," in *Jones. Trotter*, 353 So. 3d at 495. And nowhere in the district court's order does *Wharton* rear its head.

Although prior state courts had vacated sentences and then held resentencing hearings, those cases were decided before the 2016 *Montgomery* decision changed the legal landscape for *Miller* claims. *See Jones*, 122 So. 3d at 703; *Parker*, 119 So. 3d at 998; *Hudspeth v. State*, 179 So. 3d 1226, 1226 (Miss. Ct. App. 2015); *Thomas v. State*, 130 So. 3d 157, 159 (Miss. Ct. App. 2014). It appears that between *Miller* and *Montgomery*, the state courts assumed vacating and holding a resentencing hearing was the only acceptable procedure to rectify an unconstitutional sentence, though, importantly, none of the state courts held that this was the *required* process. Then *Montgomery* explained that courts are not required to relitigate sentences. *See Montgomery*, 577 U.S. at 212. With *Montgomery*'s blessing, state courts were free—as far as federal law was concerned—to forgo vacatur and proceed directly to the discretionary hearing. And no state precedent posed a barrier because no state case had explicitly held that a vacatur is first required before such hearings. Thus, the state court's decision to not vacate Trotter's sentence and instead hold a combined evidentiary and resentencing hearing was contrary to neither federal nor state law.

Further, *Montgomery* was decided two years before Trotter's September 2018 hearing. This two-year gap between the *Montgomery* opinion

and Trotter's evidentiary hearing meant that Trotter's counsel should have been on notice that the process for *Miller* claims may have changed.

As the district court correctly stated, "the Mississippi courts had clearly established federal law decided before the September 2018 hearing to support their decision not to vacate Trotter's sentence."

## C.

Trotter argues that his September 2018 hearing related to his petition for post-conviction relief cannot be considered a discretionary hearing under *Miller* for two reasons: (1) because Trotter and his counsel "believed that they had established the two elements necessary to vacate his sentence under Mississippi precedent," they did not put forth any *Miller* evidence, and this lack of evidence "removed the state circuit court's ability to conduct any meaningful individualized consideration of mitigating qualities as required by *Miller*"; and (2) in contravention of *Miller*, the state court denied that Trotter had youthful characteristics instead of considering how the factors of youth impacted the crime at issue.

Trotter's arguments each fall short under federal habeas review. First, as the state appellate court recognized—and the district court credited— Trotter "may wish that he had presented more evidence, but the [circuit] court evaluated the *Miller* factors based on the evidence before it" and only Trotter "is to blame for any lack of evidence, not the [circuit] court." *Trotter*, 353 So. 3d at 496. Whether Trotter's counsel believed that the evidentiary hearing was to determine if Trotter would then get a resentencing hearing where the *Miller* factors would be considered, or if counsel believed that Trotter was automatically entitled to be resentenced, is immaterial to the present habeas appeal. The state circuit court clearly provided that it was holding a hearing in which it would consider the *Miller* factors when it granted Trotter's motion and set an evidentiary hearing "on [Trotter's]

claims for a new trial[,] [a]lleged ineffective assistance of counsel, and resentencing under Miller [*sic*]." It explained that "Trotter is entitled to a new sentencing hearing in which the consideration of all circumstances required by Miller [*sic*] are weighed as factors in determining his sentence." Trotter thus received an opportunity to place evidence before the state court via a discretionary hearing. His failure to seize that opportunity does not negate it.

Second, *Miller* required that a sentencer afford individualized consideration of the defendant's youth and its attendant characteristics, such that youth is akin to a mitigating factor, before imposing an LWOP sentence. *See Miller*, 567 U.S. at 489 ("[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles."). And sentencers have "wide discretion in determining 'the weight to be given relevant mitigating evidence.'" *Jones*, 593 U.S. at 108 (quoting *Eddings v. Okla.*, 455 U.S. 104, 114–15 (1982)). Under *Miller*, a sentencer can determine that even upon consideration of an individual's circumstances of youth, a juvenile LWOP sentence is still merited. Here, the circuit court did just that—it considered the evidence of Trotter's youth and attendant characteristics but determined that they were insufficient in this case to justify parole eligibility.

In sum, Trotter did receive a sufficient discretionary sentencing procedure as required by *Miller* and its progeny. As the Mississippi Court of Appeals, magistrate judge, and district court all acknowledged, "[w]hile Trotter may have wished to provide more evidence relevant to his *Miller* claim, such does not change that he was afforded the opportunity to argue for resentencing under *Miller* at the September 2018 hearing and that the circuit court then evaluated the *Miller* factors he presented."

No. 24-60456

## IV.

Trotter has not shown that the state court adjudication resulted in a decision that was contrary to clearly established law or was based on an unreasonable determination of the facts in light of the evidence presented. We therefore AFFIRM the district court's judgment.