# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00990-COA

**LOIS HUDSPETH A/K/A LOIS LEE HUDSPETH A/K/A LOUIS LEE HUDSPETH A/K/A LOUIS HUDSPETH**                                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/2014 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TOMMY WAYNE DEFER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | RESENTENCED TO LIFE WITHOUT PAROLE |
| DISPOSITION: | AFFIRMED: 11/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    On June 17, 2004, Lois Lee Hudspeth pleaded guilty to murder. Hudspeth committed the murder when he was sixteen years old. At the time of his guilty plea, Hudspeth was seventeen years old. He was sentenced to life without parole in the custody of the Mississippi Department of Corrections.

¶2.    After the United States Supreme Court decided *Miller v. Alabama*, 132 S. Ct. 2455 (2012), Hudspeth filed a motion in the trial court to vacate his sentence. In *Miller*, the

Supreme Court held that mandatory life sentences without the possibility of parole for individuals under the age of eighteen years at the time of their crimes violate the Eighth Amendment prohibition against cruel and unusual punishment. *Id*. at 2469. The trial court granted the motion to vacate Hudspeth's sentence and held a hearing using the factors enunciated in *Miller* to determine whether the mandatory life sentence was to be served with or without parole. *See Parker v. State*, 119 So. 3d 987, 999 (¶28) (Miss. 2013) (If the court finds the defendant eligible for parole, "the court shall enter a sentence of 'life imprisonment with the eligibility for parole notwithstanding the present provisions of Mississippi Code Annotated section 47-7-3-(1)(h) (Rev. 2011).'").

¶3. The trial court resentenced Hudspeth to life without the possibility of parole. In this appeal, Hudspeth argues the trial court erred in finding the evidence was sufficient to support a life sentence without parole. We find no error and affirm.

## FACTS

¶4. Jennifer Young's body was found on or about November 4, 2003, in Askew Refuge in Tunica County, Mississippi. The cause of death was blunt-force trauma to Young's head. She had approximately five injuries to her head. Hudspeth later admitted to striking Young in the face with a tire iron, taking off her clothes, and dumping her body in the wildlife refuge. Hudspeth's car, where the murder occurred, was later found burned in a neighboring county.

## ANALYSIS

¶5. In his only issue on appeal, Hudspeth contends the trial court erred in sentencing him

2

to life without parole. Hudspeth argues the evidence presented at his sentencing hearing was insufficient to warrant life without parole.

¶6. The Supreme Court suggested the factors to consider when determining whether a juvenile should be sentenced to life or life without parole, including "chronological age and its hallmark features," "family and home environment," "circumstances of the homicide offense," and "the possibility of rehabilitation." *Miller*, 132 S. Ct. at 2468.[1]

¶7. In regard to chronological age and its hallmark features, the trial court noted that Hudspeth was sixteen years old, almost seventeen years old, at the time of the crime. Hudspeth's sister, Kimberly, testified that Hudspeth received no formal education after the sixth grade, and that she and Hudspeth were left to "fend for themselves" at an early age. The trial court did note that Hudspeth's plea petition indicated he had a ninth-grade education and could read and write. Officer Mark Whitten, who was an investigator with the Panola County Sheriff's Department at the time of the crime, testified that Hudspeth was street smart and familiar with criminal procedure. Hudspeth's defense attorney, David Walker, testified that Hudspeth told him he had been in special-education classes at school.

¶8. In regard to family and home environment, the trial court noted that Hudspeth did not come from a stable and caring family. There was testimony that both his parents were alcoholics and fought constantly with each other. Kimberly testified that their father was physically abusive, and both of them were removed from their parents' custody at one point.

---

[1] We note that the Mississippi Supreme Court has held that *Miller* applies retroactively to cases on collateral review. *Jones v. State*, 122 So. 3d 698, 703 (¶18) (Miss. 2013).

Hudspeth admitted to abusing alcohol and drugs. Officer Whitten stated Hudspeth was in the hospital at the time of his arrest for a suspected drug overdose. Officer Whitten testified that Hudspeth's family had a lengthy criminal history, and stated Hudspeth had been involved in criminal activity at a young age.

¶9. In regard to the circumstances of the offense, the trial court noted the heinous nature of the crime. Hudspeth admitted to beating the victim in the face with a tire iron – the autopsy indicated five distinct injuries. Hudspeth then removed her clothes and dumped her body in the woods. After Hudspeth was arrested, Kimberly told Officer Whitten that Hudspeth told her he raped the victim, beat her with the tire iron, and cut out her tongue. Kimberly stated he had been drinking and smoking marijuana the day of Young's murder. Kimberly also stated Hudspeth had pulled her by her hair and tried to attack her with a tire iron that same day. The trial court noted that there was no evidence Hudspeth succumbed to any peer pressure in committing the crime.

¶10. On the issue of rehabilitation, the trial court noted that it did "not have the clairvoyance to know if Hudspeth can, in fact, be rehabilitated." Officer Whitten opined that Hudspeth had no potential for rehabilitation. The State noted that Hudspeth had been committing criminal activity while in prison, indicated by a recent felony conviction.

¶11. The trial court also looked to whether Hudspeth had the ability to deal with the legal system and had the ability to assist his counsel. The trial court found no evidence indicating Hudspeth's inability to deal with the legal system or "any incriminating evidence that has been presented against Hudspeth that would be attributable to his age or its hallmark

4

features." Officer Whitten testified that Hudspeth was familiar with law enforcement and the criminal process. The trial court noted that Hudspeth filed pro se motions, including a motion to replace Walker as his trial counsel and a motion for a change of venue. Hudspeth insisted on and was present at his preliminary hearing. Walker indicated Hudspeth's ability to communicate without the assistance of an adult.

¶12. The trial court noted that it did "not take lightly its obligation in weighing these factors and coming to a conclusion," but that "nothing compelling, under the *Miller* factors, has been presented in mitigation other than [Hudspeth's] home life." Under the circumstances, we cannot find the trial court abused its discretion in sentencing Hudspeth to life without parole.

¶13. **THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**