# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00674-COA

JAMES MHOON                                                         APPELLANT

v.

STATE OF MISSISSIPPI                                               APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/2024 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACOB WAYNE HOWARD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/02/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On February 2, 2015, James Mhoon filed a motion for post-conviction relief (PCR) in the Circuit Court of Attala County, Mississippi. After conducting an evidentiary hearing, the circuit court entered an order denying Mhoon's request for relief. This appeal followed. After full consideration of the matters presented on appeal, we affirm the circuit court's denial of Mhoon's PCR motion.

## FACTS AND PROCEDURAL HISTORY

¶2.     In January 1983, a Grenada County grand jury returned three separate indictments charging Mhoon with capital murder as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81. The indictments charged that Mhoon killed William Denton

Lawson, Charles Kenwright Jr., and Betty Lawson while he was engaged in the commission of an armed robbery. The venue for trial was changed to Attala County. On the day of trial, after the jury had been empaneled, Mhoon pled guilty to capital murder in the killing of William Denton Lawson. The case then proceeded for the jury to determine whether Mhoon should receive the death penalty. In September 1983, the jury returned its verdict finding that Mhoon should be sentenced to death. On appeal, the death sentence was reversed, and the matter was remanded for a new sentencing hearing. *See Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

¶3.     In September 1985, at the new sentencing hearing, the jury could not agree upon a sentence. After conducting a separate sentencing hearing where the State presented proof of Mhoon's prior convictions, the circuit court sentenced Mhoon to serve a term of life imprisonment without eligibility for parole as a habitual offender pursuant to section 99-19-81.

¶4.     In *Miller v. Alabama*, 567 U.S. 460 (2012), the United States Supreme Court held that mandatory life imprisonment without parole for those under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments. The Supreme Court stated:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been

2

charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. *See, e.g.*, *Graham* [*v. Florida*], 560 U.S. [48,] 78, 130 S. Ct. [2011,] 2032 [(2010)] ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S. Ct. 2394, 2400-2401, 180 L. Ed. 2d 310 (2011) (discussing children's responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Miller*, 567 U.S. at 477-78. This holding required that before a defendant below the age of eighteen can be sentenced to life without parole, the sentencing authority must consider the so-called "*Miller* factors" discussed above. In *Jones v. State*, 122 So. 3d 698, 703 (¶18) (Miss. 2013), our Mississippi Supreme Court stated, "We are of the opinion that *Miller* created a new, substantive rule which should be applied retroactively to cases on collateral review."

¶5.     Based upon the *Miller* decision, Mhoon filed an application for leave to file a motion to vacate his sentence with the Mississippi Supreme Court on May 24, 2013. Mhoon claimed that since he was only sixteen years old at the time of his crime, his mandatory sentence of life imprisonment without parole eligibility should be vacated and the matter remanded to Attala County Circuit Court for re-sentencing. In the alternative, Mhoon sought permission from the supreme court to file a PCR motion in circuit court. By order entered on November 5, 2014, the supreme court granted Mhoon leave to file his PCR motion in the Attala County Circuit Court regarding his claim for relief under *Miller*.

¶6.     As noted above, Mhoon filed his PCR motion in the circuit court on February 2, 2015. In this motion, Mhoon contended that he was entitled to relief from his mandatory life

3

sentence because "[s]ection 99-19-81 is unconstitutional as applied to him, he must be re-sentenced to life *with* parole pursuant to the versions of the capital murder sentencing statutes that controlled at the time of his crime. Any greater sentence would violate the ex post facto clauses of the state and federal constitutions." In his motion, Mhoon contended that a new sentencing hearing was not necessary in his case and that he must be sentenced to life with eligibility for parole after having served ten years of his sentence, based upon the applicable statutes. In the event the circuit court found that a new sentencing hearing was necessary, Mhoon contended in subsequent pleadings that he had a constitutional right to be sentenced by a jury. The State's position before the circuit court was that a hearing should be conducted for the court to determine whether Mhoon should be sentenced to life without parole eligibility as a habitual offender under section 99-19-81.

¶7.     Ultimately, after multiple filings and a mental health evaluation, on March 20, 2024, an evidentiary hearing was conducted. Before the hearing began, Mhoon's counsel argued that under *Miller*, Mhoon's sentence should be vacated, and the "*Miller* hearing" should be conducted as a criminal proceeding under the original case number and not as a civil proceeding relative to his PCR motion. The State argued that the Mississippi Supreme Court had ruled that the original sentence should not be automatically vacated and that the *Miller* hearing should be conducted as a part of the civil post-conviction hearing. The circuit court judge agreed with the State, noting, "I am not in the habit of intentionally overruling the Mississippi Supreme Court, so I feel like since they have addressed these issues, I have to follow the procedures that have been laid out by the Mississippi Supreme Court until they

4

change the law if they choose to at some later point."

¶8. After the court's ruling, the evidentiary hearing was conducted, giving Mhoon the opportunity to present evidence related to the *Miller* factors to show that the mandatory sentence to life without parole eligibility was unconstitutional as applied to him in this case. Several exhibits were admitted into evidence by agreement of both sides before any witnesses were called to testify. Mhoon then called four witnesses and introduced several exhibits in support of his motion. The State cross-examined Mhoon's witnesses but did not call any additional witnesses on its behalf. After hearing the evidence and the arguments of counsel, the court took the matter under advisement.

¶9. The court issued its ruling on May 22, 2024. In its thirteen-page opinion, the court discussed its findings of fact as to each of the *Miller* factors that the court was required to consider. The court found that Mhoon had failed to meet his burden of proof to show that he was entitled to relief and denied his motion.

**ANALYSIS**

¶10. Mhoon raises three issues on appeal. In the first two issues, he contends that the circuit court erred by failing to set aside his unconstitutional sentence and by conducting the *Miller* hearing as part of the civil post-conviction collateral proceeding. Mhoon also contends that the circuit court's factual findings concerning the *Miller* factors are clearly erroneous. We must first address the holding in *Miller* and the process established by the Mississippi Supreme Court for the consideration of the *Miller* factors. In *Clemons v. State*, 384 So. 3d 560, 564-65 (¶¶8-9) (Miss. Ct. App. 2024), this Court explained:

5

As interpreted by the United States Supreme Court in *Miller*, the Eighth Amendment to the United States Constitution prohibits mandatory life-without-parole sentences for defendants who are under the age of eighteen at the time of their crimes. *Miller*, 567 U.S. at 470. However, *Miller* and its progeny "allow [] discretionary life-without-parole sentences for those offenders." *Jones*, 593 U.S. at 103. The Supreme Court has "mandated only that a sentencer follow a certain process—considering an offender's youth and attendant characteristic—before imposing a life-without-parole sentence." *Id.* at 108 (quotation marks omitted). "[T]o separate those juveniles who may be sentenced to life without parole from those who may not," the court must afford the defendant "[a] hearing where youth and its attendant characteristics are considered as sentencing factors[.]" *Id.* at 111 (quoting *Montgomery*, 577 U.S. at 210). **Following that hearing, the sentencer should consider the "*Miller* factors," which include (1) the defendant's "chronological age and the hallmark features among that age"; (2) the defendant's "family and home environment"; (3) the "circumstances of the offense"; (4) the defendant's "ability to deal with the legal system" (i.e., whether "he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth"); and (5) the "possibility of rehabilitation."** *Alexander v. State*, 333 So. 3d 19, 23 (¶17) & n.3 (Miss. 2022). **However, *Miller* and its progeny do "not impose a formal fact finding requirement,"** *Jones*, 593 U.S. at 112 (quoting *Montgomery*, 577 U.S. at 211), **and "sentencers are afforded 'wide discretion in determining the weight to be given relevant mitigating evidence.'"** *Alexander*, 333 So. 3d at 27 (¶33) (other quotation marks omitted) (quoting *Jones*, 593 U.S. at 108). And while the sentencer must consider the *Miller* factors and the evidence relevant to those factors, **"the burden rests with the juvenile offender to convince the [sentencer] that *Miller* considerations are sufficient to prohibit a sentence of life without parole."** *Wharton v. State*, 298 So. 3d 921, 927 (¶25) (Miss. 2019) (quotation marks omitted).

"[T]here are two applicable standards of review in a *Miller* case. First, whether the trial court applied the correct legal standard is a question of law subject to de novo review." *Chandler v. State*, 242 So. 3d 65, 68 (¶7) (Miss. 2018). "If the trial court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion." *Id.*

(Emphasis added). We now address the issues Mhoon raises on appeal.

I.      **Did the circuit court err by conducting the *Miller* hearing as a part of the civil post-conviction proceeding?**

¶11.    Mhoon argues that pursuant to *Miller*, his mandatory sentence of life without parole eligibility pursuant to section 99-19-81 violates his constitutional rights. His argument is based solely upon the fact that he was sixteen years old at the time of his crime and that the sentence was mandatory under the statute. He continues to argue that the sentence should have been set aside in the civil post-conviction proceeding and that the discretionary sentencing procedure should have been conducted in the original criminal case. He argues that a post-conviction evidentiary hearing is not a "sentencing procedure." Mhoon then points to several differences between a civil hearing and a criminal sentencing hearing.

¶12.    Concerning the process to be followed in *Miller* cases, the supreme court stated in *Wharton v. State*, 298 So. 3d 921, 926-28 (¶¶24, 29) (Miss. 2019):

> ¶24.    **The Supreme Court has left to the states the responsibility to determine how *Miller* is to be implemented in state-court proceedings and how to remedy a *Miller* violation or potential violation.** *Id*. at 735-36. *Montgomery* reiterated that, "[w]hen a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems." *Id*. at 735 (citing *Ford v. Wainwright*, 477 U.S. 399, 416-17, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986)). "*Miller* . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole." *Id*. at 736.
>
> . . . .
>
> ¶29.    We point out that, even though the *Jones* Court found it necessary to vacate the petitioner's original sentence and remand for a new sentencing hearing, it did so before *Montgomery*. **Having examined *Montgomery*, we conclude that it is error for our trial courts to vacate a juvenile's original life-without-parole sentence (or life sentence) before conducting a *Miller* hearing. Neither *Miller* nor *Montgomery* mandate this.**

(Emphasis added) (footnote omitted). The circuit court in Mhoon's case conducted the *Miller*

evidentiary hearing in the PCR proceeding and did not vacate his sentence. It is clear that the

circuit court followed the procedure required by the Mississippi Supreme Court. Both the

circuit court and this Court are bound to follow the process set forth in *Wharton*.[1] This issue

is without merit.

### II. Were the circuit court's findings of fact concerning the *Miller* factors clearly erroneous?

¶13. Following the evidentiary hearing, the circuit court issued a thirteen-page opinion

considering the evidence as to each of the *Miller* factors. On appeal, Mhoon challenges each

of the circuit court's factual findings on the *Miller* factors as being clearly erroneous and

argues that the circuit court's denial of relief should be reversed and his case remanded.

Mhoon contends that the circuit court ignored evidence supporting a life-with-parole-

eligibility sentence and relied on facts that are not in evidence.

¶14. Concerning a circuit court's consideration of the *Miller* factors, the cases provide:

1. It is the role of the circuit court to determine the weight of the evidence presented and the credibility of the testimony from each witness. It is also for the circuit court to determine the weight that should be given to each *Miller* factor. *See McGilberry v. State*, 292 So. 3d 199, 208-09 (¶¶42-43) (Miss. 2020).

2. There is no rebuttable presumption in favor of parole eligibility for juvenile homicide offenders. *See Chandler v. State*, 242 So. 3d 65, 69-70 (¶15) (Miss. 2018).

3. The circuit court is given wide discretion in determining the weight to

---

[1] *See Moran v. State*, 235 So. 3d 101, 103 (¶6) (Miss. Ct. App. 2017) ("'This Court, sitting as an intermediate appellate court, is obligated to follow precedent established by the Mississippi Supreme Court.' *Kennedy v. State*, 766 So. 2d 64, 65 (¶3) (Miss. Ct. App. 2000). 'We . . . do not have the authority to overrule a decision of our Supreme Court.' *Miles v. State*, 864 So. 2d 963, 965-66 (¶8) (Miss. Ct. App. 2003).").

be given to relevant evidence of the *Miller* factors. *See Alexander v. State*, 333 So. 3d 19, 27 (¶33) (Miss. 2022).

4.   The circuit court is not required to make findings as to each *Miller* factor. *See Johnson v. State*, 396 So. 3d 1073, 1082 (¶37) (Miss. 2024).

5.   Where the defendant fails to present sufficient credible evidence to convince the circuit court that the *Miller* considerations prohibit the imposition of a life without parole sentence, such a sentence is proper. *See Ealy v. State*, 324 So. 3d 306, 316 (¶38) (Miss. Ct. App. 2019).

As noted above in *Clemons*, we review the court's sentencing decision for an abuse of discretion. We will address the circuit court's findings as to each of the *Miller* factors below.

### 1.    The Defendant's Chronological Age and its Hallmark Features

¶15.   The circuit court noted Dr. Lott's testimony, "in broad generalities," about issues relating to adolescent behavior. Dr. Lott discussed "poor decision-making, risk-taking, inability to assess consequences, impulsiveness, and susceptibility to peer pressure." Dr. Lott opined that impulse control is not fully developed until the mid-twenties. Dr. Lott did not testify that Mhoon's "chronological age and the hallmark features of adolescence played a significant role in the commission of the Jiffy Mart murders." The court also noted that Mhoon had been certified as an adult when he was fourteen years of age and pled guilty to two felony burglary charges. Thus, the circuit court found that there had been a judicial finding that Mhoon "had the knowledge and maturity to be treated as an adult for court purposes."

¶16.   In making its finding as to this factor, the court stated:

As previously noted, at the time of the murders, Mhoon was 16 years and 9 months of age. He had already been convicted of two previous felonies and served time in the penitentiary. Additionally, at the time of the murders,

9

Mhoon had fathered a child with a 35 year old woman, smoked, drank alcohol, and used drugs. All of this behavior could suggest that Mhoon was immature and impulsive at the time the murders were committed. The behavior could equally suggest that Mhoon was mature for his age and living a life as an adult at the time of the murders.

Given Mhoon's prior criminal history, including spending time in the penitentiary, his planning and masterminding of the plot to commit armed robbery, his engagement in adult activities, and the fact that he was nearly 17 years of age at the time of the crime, **this court finds that Mhoon has failed to show that his chronological age was a contributing factor in the commission of the murders.**

(Emphasis added).

### 2. Family and Home Environment

¶17. After hearing the evidence presented at the hearing, the circuit court found that Mhoon's family life and home environment were "awful." The court noted that the State had conceded that the conditions in which Mhoon was raised were "bad." The court also noted that Dr. Lott testified that these conditions "*may* have contributed to his criminal conduct." The court stated that the person with the most insight as to the effect this had on his conduct would be Mhoon himself, who chose not to testify. The court concluded by stating that it

has no doubt that Mhoon's family and home environment played a role in his life's choices, as did everything else that he had experienced. However, this court is not convinced that his family and home life is why he ended up at Lawson's Jiffy Mart on November 9, 1982.

### 3. Circumstances of the Offense

¶18. In this section of the circuit court's opinion, the judge described the sad events of November 9, 1982. The court described how Mhoon came up with a plan to commit an armed robbery. At first, Mhoon and Wofford attempted to make masks to wear during the

robbery, but abandoned that effort. The first location that the pair went to rob had too many potential witnesses, so they then went to Lawson's Jiffy Mart. They entered the store, without concealing their identity, and encountered William Denton Lawson, Betty Lawson, and Charles Kenwright. Mhoon and Wofford forced these three into a storage room where, as the victims begged for their lives, all three were executed. Mhoon contends he killed William Lawson (the victim he pled guilty to killing) and that Wofford killed the other two. Wofford maintained that Mhoon murdered all three. The pair then made off with their loot: "$169.00 in cash, of which Mhoon received $83.00. Additionally, they stole cigarettes, cigarette lighters, knives, rings, necklaces and a few other trinkets." This part of the court's opinion concluded by stating:

> This court finds that nothing has been offered to show that Mhoon's participation in the murders was due to peer or familial pressure. Hence, considering that fact, and considering all the facts and circumstances, this court finds nothing about the facts surrounding the murders that would mitigate against Mhoon's sentence of life without parole.

4. *Chance of Lesser Offense if not for Incompetencies Associated with Youth*

¶19. In this part of the opinion, the circuit court found:

> It is clear that Capital Murder was the appropriate charge for the crime. The only other possible charge that he may have potentially faced was the crime of murder. However, due to Mhoon being a habitual offender, the sentence for either crime would have been a sentence of life imprisonment without parole. This court finds that the incompetencies associated with his youth did not cause Mhoon to be charged with the crime of Capital Murder since a charge to a lesser offense would not have been appropriate given the facts and circumstances surrounding the crime.

5. *Chances of Rehabilitation*

¶20. The circuit court found that Dr. Lott's testimony as to this factor to be of no value. Dr. Lott had testified in eleven prior *Miller* hearings that the inmate was capable of rehabilitation. The court noted that in all eleven, this testimony had been discounted or rejected. The court pointed out that although Dr. Lott opined that Mhoon was capable of rehabilitation, he admitted that he had never performed a psychological evaluation for *Miller* proceedings on anyone he found to be incapable of rehabilitation. Further, the court explained that it found Dr. Lott to be "dismissive" of that fact that Mhoon had around 200 "Rule Violation Reports" while incarcerated, and many were the result of "perverse sexual behavior."

¶21. The circuit court gave Mhoon credit for the fact that he had completed many self-improvement programs during his incarceration; however, many of those were undertaken after Mhoon filed his PCR motion. The opinion points out that Mhoon had the opportunity to explain how, as a man fifty-eight years old, he had changed since being a boy of sixteen years and nine months old; however, Mhoon chose not to do so. Furthermore, Mhoon could have explained how he would spend the remainder of his life if released on parole.

¶22. The circuit court concluded this section of the opinion as follows:

> On the issue of rehabilitation, this court finds itself in much the same situation as the trial judge in *Hudspeth v. State*, 179 So. 3d 1226, 1228 (Miss. Ct. App. 2015), who noted that he did "not have the clairvoyance to know if Hudspeth can, in fact, be rehabilitated."
>
> The issue as to whether an individual is capable of rehabilitation is perhaps the most difficult *Miller* factor to consider because the court must engage in "speculation, guesswork, and conjecture," something this court for over 31 years has been instructing juries not to do. As already mentioned, Dr. Lott is the only person that testified as to Mhoon's potential for rehabilitation, and his

opinion, for the reasons already mentioned, was not helpful. This court, therefore, finds that Mhoon has failed to provide this court with sufficient proof that he is capable of rehabilitation.

(Footnote omitted).

## CONCLUSION

¶23. After a full consideration of the *Miller* factors, the circuit court concluded that Mhoon had failed to meet his burden of proof. In *Trotter v. State*, 353 So. 3d 484, 494-95 (¶43) (Miss. Ct. App. 2022), concerning what must be shown to obtain relief, this Court stated:

> *Trotter* recognizes that in *Wharton v. State*, 298 So. 3d 921 (Miss. 2019), our supreme court held that "[c]onsistent with *Miller* and *Montgomery* [*v. Louisiana*, 577 U.S. 190 (2016)], prisoners . . . are entitled to relief under the [Uniform Post-Conviction Collateral Relief] Act, if they can demonstrate that their life-without-parole sentence is unconstitutional under the Eighth Amendment. This requires showing that, under application of the *Miller* factors . . . , the offender's life-without-parole sentence is unconstitutional." *Wharton*, 298 So. 3d at 927 (¶¶26-27). . . . In *Jones v. State*, 122 So. 3d 698, 702 (¶14) (Miss. 2013), our supreme court held that a sentence of life without parole "can be applied constitutionally to juveniles who fail to convince the sentencing authority that *Miller* considerations are sufficient to prohibit its application."

The circuit court found that while the "Family and Home Environment" factor might weigh in favor of Mhoon's request for relief, the other four *Miller* factors did not. The circuit court found that a sentence of life imprisonment without parole eligibility is the appropriate sentence in Mhoon's case. We cannot find that the circuit court abused its discretion in this regard.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**